Wayne SCOTT, Appellant,

v.

Wallace R. BRITTON, Sr., and Nancy Murphy, as next friend of Norman Britton, a minor, Appellees.

No. 01–99–01101–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 13, 2000.

175

Richard D. Naylor, Austin, for appellant.

Monica Celeste Vaughan, Houston, for appellee.

Panel consists of Justices MIRABAL, TAFT, and PRICE.*

## OPINION

TIM TAFT, Justice.

Wallace Britton, Jr., (the deceased), died from heat stroke while confined on a broken-down prison bus in hot weather. Appellees, Wallace R. Britton, Sr., father of the deceased, and Nancy Murphy, as next friend of Norman Britton, son of the deceased, brought suit against appellant, Wayne Scott, Director of the Texas Department of Criminal Justice—Institutional Division (TDCJ). Appellees asserted state claims of negligence, survival action and wrongful death damages, and federal violations of due process and Eighth Amendment rights. Scott challenges the trial court's granting the appellees' motion

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

for summary judgment while denying his motions for summary judgment, all of which concerned Scott's affirmative defense of immunity. We address (1) whether Scott established as a matter of law that he is entitled to official immunity for appellees' state law claims, (2) whether Scott, in his official capacity, is entitled to summary judgment on the section 1983[1] claim, and (3) whether Scott, in his individual capacity, is entitled to summary judgment on the section 1983 claim. We reverse and render.

## Facts

During the summer of 1995, the deceased and approximately 45 other psychiatric inmates were being transported by bus from the Jester IV Unit near Richmond, Texas, to the Montford hospital at Lubbock, Texas. The unairconditioned bus broke down in 100–degree weather. The correctional officers on the bus immediately notified their supervisors, called for local law enforcement assistance, called a local mechanic, and made ice water available to the inmates. During the two-hour wait, neither the deceased nor any of the inmates on the bus were allowed off the bus. The deceased suffered a heat stroke that day and died two days later. The deceased was under medication prescribed by physicians working for the Texas Department of Criminal Justice (TDCJ) as part of his treatment. Some of his medications could predispose a patient to heat stroke.

## Procedural History

Appellees sued the TDCJ, Scott, and the three guards who were on duty when the bus broke down. Appellees alleged state claims of negligence, wrongful death and survival action damages,[2] and federal violations of the deceased's Due Process and Eighth Amendment rights under section 1983.

Scott filed a motion for summary judgment claiming he was entitled to summary judgment on appellees' claim under section 1983. In that motion, Scott argued that appellees' allegations against him did not support a claim of deliberate indifference under the Eighth Amendment or a due process claim under the Fourteenth Amendment, that negligence claims do not give rise to constitutional claims under section 1983, that Scott was not a "person" under section 1983 in his official capacity, that the section 1983 claims brought against him in his individual capacity were barred by the two-year statute of limitations, and that Scott was entitled to qualified immunity.

Appellees filed a no-evidence motion for summary judgment on Scott's affirmative defense of official immunity. Appellees claimed that Scott had not brought forward any evidence on each of the elements required for official immunity: (1) that Scott was performing discretionary duties; (2) undertaken in good faith; (3) while acting within the scope of his authority.

Scott filed a supplemental motion for summary judgment claiming he was entitled to official immunity regarding appellees' state law claims. Scott argued he was entitled to official immunity because his actions were discretionary, he acted in good faith, and he acted within the scope of his authority.

The trial court denied Scott's motions and granted appellees' motion for summary judgment. Scott has timely perfected this interlocutory appeal. Generally, no appeal may be taken from the denial of a summary judgment. *Novak v. Stevens,*

---

1. 42 U.S.C.A. § 1983 (Civil Rights Act of 1964).

2. Appellees allege that all defendants violated the Texas Tort Claims Act (TTCA). The TTCA does not create a cause of action. *City of Tyler v. Likes,* 962 S.W.2d 489, 494 (Tex.

1997). Rather, the TTCA merely waives sovereign immunity allowing the state to be sued under particular circumstances. *Id.* We interpret the substance of appellees' petition to allege negligence and wrongful death and survival actions.

596 S.W.2d 848, 849 (Tex.1980); *Community Mut. Ins. Co. v. Owen,* 804 S.W.2d 602, 605 (Tex.App.—Houston [1st Dist.] 1991, writ denied). One of the recognized exceptions is:

> A person may appeal from an interlocutory order of a district court that ... denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state.

TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(5) (Vernon 1997). Therefore, we are authorized to consider Scott's assertion of immunity.

### Standard of Review

Both of Scott's motions for summary judgment sought traditional summary judgment under rule 166a(c). Summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Lawson v. B Four Corp.,* 888 S.W.2d 31, 34 (Tex.App.—Houston [1st Dist.] 1994, writ denied). In reviewing a summary judgment, we must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in his favor. *Randall's Food Mkts.,* 891 S.W.2d at 644; *Lawson,* 888 S.W.2d at 33.

Appellees presented a no-evidence motion for summary judgment, pursuant to rule 166a(i), under which the non-movant has the burden to bring forward evidence raising a genuine issue of material fact on the challenged elements. *Macias v. Fiesta Mart, Inc.,* 988 S.W.2d 316, 317 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented. *Commissioners Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997); *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). The reviewing court should render the judgment that the trial court should have rendered. *Agan,* 940 S.W.2d at 81; *Members Mut. Ins. Co. v. Hermann Hosp.,* 664 S.W.2d 325, 328 (Tex. 1984).

### TTCA: Official Immunity

■ In his first issue, Scott argues the trial court erred in denying his motion for summary judgment because he is entitled to official immunity against appellees' state law claims. Government employees or officials are entitled to immunity from suit arising from the performance of (1) discretionary duties (2) executed in good faith (3) while acting within the scope of their authority. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994); *Font v. Carr,* 867 S.W.2d 873, 879 (Tex.App.— Houston [1st Dist.] 1993, writ dism'd w.o.j.).

### A. Discretionary Duty

■ This Court must determine if the conduct in question is discretionary or ministerial. An official is not entitled to immunity when he performs a ministerial duty. *Kassen v. Hatley,* 887 S.W.2d 4, 9 (Tex.1994). If an act involves personal deliberation, decision, and judgment, it is discretionary; actions that require obedience to orders, or the performance of a duty to which the actor has no choice, are ministerial. *Chambers,* 883 S.W.2d at 654; *City of Columbus v. Barnstone,* 921 S.W.2d 268, 272 (Tex.App.—Houston [1st Dist.] 1995, no writ).

The appellees maintain that in adopting and implementing of procedures and policies to properly provide for the safety of inmates like the deceased, Scott's conduct was ministerial. Appellees specifically state in their brief, "Given the likelihood of these buses breaking down, policies and procedures should have been instituted to prevent prisoners like the deceased from suffering a heat stroke." Appellees contend that instituting these policies and pro-

cedures is a required act that leaves no room for judgment or deliberation because the TDCJ is required to provide safe confinement for inmates. *See* Tex. Govt.Code Ann. § 494.001 (Vernon 1998) ("The mission of the institutional division is to provide safe and appropriate confinement, supervision, rehabilitation, and reintegration of adult felons, and to effectively manage or administer correctional facilities based on constitutional and statutory standards.").

Scott's summary judgment evidence included the procedure manual that he approved and was in effect at the time of the incident. This manual provides guidelines for officers transporting inmates. The manual specifies rules officers are to follow when the bus breaks down, when the bus breaks down in remote areas, and when a medical emergency occurs during the transport of inmates. In the event a bus transporting inmates breaks down hundreds of miles from a TDCJ Unit, the manual requires that officers contact their supervisor, call for a wrecker, maintain the security of the vehicle, and contact local law enforcement. In the event of a medical emergency, an officer is directed not to open the security cage, but to determine what is wrong, and drive to the nearest TDCJ Unit or seek local law enforcement help. Scott testified that decisions regarding whether it was safe to unload the bus during a breakdown or emergency were left to the discretion of the officers on the bus. Scott produced this manual as proof that he had complied with Government Code section 494.001 and that the duties specified were discretionary.

■ Appellees do not argue that the officers failed to comply with these guidelines, but that Scott should have promulgated better guidelines to account for the weather, long distances between units, and the likelihood of mechanical breakdown in the heat. Appellees do not refer us to any authority to support their claim that the failure to do a job better makes a duty ministerial as opposed to discretionary,

and we have found none. There is no question that the manual promulgated by Scott could have been more thorough by accounting for the threat of a breakdown during the summer months. The potential to do better does not in any way determine whether a duty is discretionary, however. The key issue remains whether the action involved personal deliberation, decision, and judgment. *Chambers*, 883 S.W.2d at 654; *Barnstone*, 921 S.W.2d at 272.

■ While the manual dictates specific duties of the officers, Scott stated, in deposition testimony, that officers were still expected to use their discretion in deciding whether it was safe and feasible to remove prisoners from the bus during a breakdown. The focus is not on whether the guards' conduct is discretionary, however, but on whether Scott's conduct in drafting the manual for the safe transportation of inmates is discretionary.

■ We fail to see how Government Code section 494.001, which establishes a generic duty to provide safe confinement for inmates, makes the promulgation of particular policies and procedures for the safe transportation of inmates a ministerial function. Government Code section 494.001 is "not sufficiently specific so as to leave no choice to an officer in the performance of these duties." *Chambers*, 883 S.W.2d at 655. Appellees suggest that various means and methods of transportation and confinement during a breakdown could have been used to ensure the safety of the inmates. Recognizing that options were available to Scott in promulgating safety guidelines or procedures dealing with a breakdown during the transportation of inmates implies that personal deliberation, decision, and judgment were involved. *See Kassen*, 887 S.W.2d at 9. Complying with Government Code section 494.001 does not require Scott to obey orders or perform a duty about which he has no choice. *See Chambers*, 883 S.W.2d at 655; *Barnstone*, 921 S.W.2d at 272. Scott's act of promulgating a manual for

the safe transportation of inmates involved personal deliberation, decision and judgment, and was therefore discretionary. *Chambers,* 883 S.W.2d at 654; *Barnstone,* 921 S.W.2d at 272.

## B. Good Faith

 This Court must measure good faith in official immunity cases against a standard of objective reasonableness, without regard to the official's subjective state of mind. *Chambers,* 883 S.W.2d at 656; *Cobb v. Texas Dept. of Crim. Justice,* 965 S.W.2d 59, 64 (Tex.App.—Houston [1st Dist.] 1998, no pet.). This determination requires a two-part test that balances the seriousness of the situation, as well as the alternatives available to the official, against "the nature and severity of harm that the officer's actions could cause, the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer." *Wadewitz v. Montgomery,* 951 S.W.2d 464, 467 (Tex. 1997); *Cobb,* 965 S.W.2d at 64. To be entitled to summary judgment, an official must prove that a reasonably prudent official might have believed that the action taken was appropriate. *Chambers,* 883 S.W.2d at 656–57; *Gallia v. Schreiber,* 907 S.W.2d 864, 869 (Tex.App.—Houston [1st Dist.] 1995, no writ). The official need not prove that it would have been unreasonable to take different action, nor that all reasonably prudent officers would have acted as he did. *Chambers,* 883 S.W.2d at 656–57; *Gallia,* 907 S.W.2d at 869.

Scott's testimony that the manual he promulgated allowed officers to use their discretion during emergency situations indicates that Scott took the risks involved into consideration. Scott produced summary judgment evidence demonstrating that his actions in adopting and implementing safety procedures for the transportation of inmates were reasonable. Scott stated in an affidavit that he promulgated the policies and procedures regulating the transportation of inmates after proper study, research, and recommenda-

tions from his staff. Finally, Scott stated that any reasonable director of a penal system could have adopted these same procedures for transportation, classification, and inmate transfer. Consequently, Scott has shown that his actions in adopting the procedures in effect on the date of the deceased's death were objectively reasonable. Appellees offered no summary judgment evidence to dispute this testimony and have not challenged it on appeal.

## C. Scope of Authority

 Appellees have stipulated that, at all material times, Scott was acting within the scope of his authority as director of TDCJ. Because Scott's summary judgment evidence established he was engaged in the performance of discretionary duties in good faith within the scope of his authority, he is entitled to official immunity. *See Chambers,* 883 S.W.2d at 653; *Font,* 867 S.W.2d at 879.

We sustain Scott's first issue.

## Section 1983

In issues two through four, Scott argues that the trial court erred in denying his motion for summary judgment on appellees' section 1983 claim. Scott claims that appellees' claims are barred because Scott, in his official capacity, is not a "person" under section 1983. In his individual capacity, Scott argues that he is entitled to qualified immunity from suit under section 1983.

## A. Official Capacity

 Appellees have brought a claim against Scott under section 1983 for violations of the deceased's Eighth Amendment right against cruel and unusual punishment and Fourteenth Amendment right to due process. Scott argues in his third issue that he is not a proper defendant under section 1983 because, as a governmental official in his official capacity, he is not a "person" under section 1983. Sec-

tion 1983 of the Civil Rights Act provides as follows:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added).

 A suit against a state official in his official capacity is not a suit against the official but the official's office and the state for which the official is an agent. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex.App.—Houston [1st Dist.] 1995, no writ). The suit is therefore the same as one brought directly against the state. *Will*, 491 U.S. at 71, 109 S.Ct. at 2312; *Kmiec*, 902 S.W.2d at 122. In addressing this exact issue, the United States Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71, 109 S.Ct. at 2312; *see Harrison v. Texas Dep't of Crim. Justice*, 915 S.W.2d 882, 889–90 (Tex.App.—Houston [1st Dist.] 1995, no writ). Therefore, Scott, in his official capacity, is entitled to summary judgment on appellees' section 1983 claim.

We sustain the portion of Scott's third issue dealing with official capacity.[3]

## B. Individual Capacity

 In his second and fourth issues, Scott contends he is entitled to qualified immunity, in his individual capacity, from appellees' section 1983 claim. The doctrine of qualified immunity shields an official performing discretionary functions from liability for civil damages under section 1983, provided the official's conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have been aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Thomas v. Collins*, 860 S.W.2d 500, 503 (Tex.App.—Houston [1st Dist.] 1993, writ denied). A legal right is "clearly established" when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). After a governmental official asserts the affirmative defense of qualified immunity, the burden shifts to the plaintiff to show that the defendant's conduct violated clearly established statutory or constitutional rights of which a reasonable person would have been aware. *Whatley v. Philo*, 817 F.2d 19, 20 (5th Cir.1987); *Thomas*, 860 S.W.2d at 503. We examine the appellees' section 1983 claim to determine which constitutional rights they claim were violated, and then decide if appellees pled the violation sufficiently. *Brown v. Texas A & M Univ.*, 804 F.2d 327, 333–34 (5th Cir.1986); *Thomas*, 860 S.W.2d at 503.

### 1. Fourteenth Amendment: due process

 The United States Supreme Court has held that acts of negligence by state officials that result in unintended loss or injury to life, liberty, or property do not constitute a due process violation under the Fourteenth Amendment. *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). In circumstances similar to the facts of this case, the Court of Appeals for the Fifth Circuit has held that the conduct of state officials was merely negligent and did not implicate due process concerns. *Lemoine v. New Hori-*

---

**3.** In his third issue, Scott also raises the issue of statute of limitations. We do not address this argument because the other issues raised are dispositive.

zons Ranch & Center, Inc., 174 F.3d 629, 635–36 (5th Cir.1999).

Lemoine involves a 12–year–old boy who was under the managing conservatorship of the Texas Department of Protective Regulatory Services. While at New Horizons Ranch, he was forced to work as part of a behavior-modification program that involved moving 40–pound rocks all day with temperatures reaching 103 degrees. Id. at 631. The boy had been prescribed a complex diet of anti-psychotic and psychotropic drugs whose side effects made him hypersensitive to light and less able to dissipate heat. Id. at 631. The boy died 32 days after being transferred to the New Horizons Ranch. Id. at 632. The boy's mother sued many individuals, from those who were at the scene on up to supervisory officials with positions similar to Scott's. Id. at 633. As in our case, the defendants in Lemoine appealed the district court's denial of their motion for summary judgment based on qualified immunity. Id. at 633. The appellate court held that the conduct of state officials was merely negligent, at most. Id. at 635.

Here, as in Lemoine, appellees have pled facts that could only rise to the level of negligence. Consequently, they have not pled sufficient facts showing that Scott's conduct violated clearly established constitutional or statutory rights of which a reasonable person would have been aware, and have thus not sufficiently pled a due process violation. See Harlow, 457 U.S. at 818, 102 S.Ct. at 2738; Brown, 804 F.2d at 333–34; Thomas, 860 S.W.2d at 503.

## 2. Eighth Amendment: cruel and unusual punishment

In cases involving a failure to prevent harm, the plaintiff must demonstrate an incarceration under conditions posing a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). An Eighth Amendment violation occurs when the deprivation alleged is objectively serious and the prison official acted with deliberate indifference to inmate health and safety. Id. This requires "more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). Moreover, the prison official must "know of and disregard an excessive risk to inmate health or safety." Farmer, 511 U.S. at 838, 114 S.Ct. at 1979. This means the official must be aware of facts from which it could be inferred that a substantial risk of serious harm exists, and must draw that inference. Id. Thus, proof of deliberate indifference requires a showing of subjective recklessness. Id. 511 U.S. at 839, 114 S.Ct. at 1980 (defining "reckless" as "consciously disregard[ing] a substantial risk of serious harm." by adopting Model Penal Code § 2.02(2)(c)).

Appellee claims the policy and procedures dispensed by Scott violated the deceased's Eighth Amendment right against cruel and unusual punishment. Specifically, appellees argue that forcing the deceased to stay on a broken-down bus with 45 other men in 100–degree weather, while on heat-stress inducing drugs, was cruel and unusual punishment that led to the eventual death of the deceased. Here again, the focus of this analysis is not on the action of the prison guards who decided to keep the prisoners on the bus, but on the policy and procedures promulgated by Scott that allowed the guards to use their discretion in determining whether to remove the prisoners from the bus during the breakdown.

Scott's conduct does not rise to the level of subjective recklessness. We agree that the deceased's particular circumstances posed a substantial risk of serious harm. See Farmer, 511 U.S. at 834, 114 S.Ct. at 1977. However, it cannot be said that Scott acted with subjective recklessness in promulgating safety regulations that did not adequately provide for prisoners in this unique situation. Assuming all of the allegations by appellees are true, they do not support a conclusion that Scott was

aware of, or should have been aware of, the substantial risk of harm to the deceased and consciously disregarded that risk. *Id.,* 511 U.S. at 839, 114 S.Ct. at 1980.

At worst, Scott's actions rose to a level of negligence. Because due process analysis shows mere negligence, Scott's conduct does not rise to the level of subjective recklessness under an Eighth Amendment analysis. *See Lemoine,* 174 F.3d at 635–36. Consequently, the circumstances do not indicate that Scott's conduct violated clearly established constitutional or statutory rights of which a reasonable person would have been aware. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738; *Thomas,* 860 S.W.2d at 503. Likewise, taking appellees' allegations as true, they do not show an Eighth Amendment violation. *See Brown,* 804 F.2d at 333–34 (5th Cir. 1987); *Thomas,* 860 S.W.2d at 503. Therefore, Scott, in his individual capacity, is entitled to qualified immunity and summary judgment on appellees' section 1983 claim.

We sustain Scott's second and fourth issues.

### Conclusion

We reverse the judgment of the trial court, which rendered summary judgment in favor of the appellees and denied Scott's motions for summary judgment, and render judgment in favor of Scott against appellees' claims under state and federal law.