COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)
 

THE CITY OF EL PASO, TEXAS,
)
 No. 08-02-00240-CV

)


 Appellant,
)
 Appeal from

)
 

v.
)
 120th District Court

)


EDUARDO SEGURA,
)
 of El Paso County, Texas

)


 Appellee.
)
 (TC# 2000-144)


MEMORANDUM OPINION



 Eduardo Segura filed this suit against the City of El Paso, Texas, Martin Alvarado, and the
Dan Williams Company after he was injured in a motorcycle accident on a public street. The City
filed both a plea to the jurisdiction and motion for summary judgment on the grounds of sovereign
immunity. The trial court denied the City's motions. The City brings this interlocutory appeal as
authorized by Tex.Civ.Prac.&Rem.Code Ann. § 51.014 (Vernon 1997). We reverse and render.

FACTUAL SUMMARY


 The City of El Paso contracted with the Texas Department of Transportation ("TXDOT") to
conduct road improvements on a section of Doniphan Drive, which is a state-maintained roadway. 
The construction began in June 1999 and ended in August or early September of that year. TXDOT
provided the construction management and contracted with the Dan Williams Company ("DWC")
to provide the actual improvements. DWC placed warning signs, barricade barrels, and a directional
light generator as required by its contract with TXDOT. (1) The two northbound lanes merged into one
lane at the point of the directional sign's original location.

 The City agreed to acquire the funding for any required right-of-way and any easements
necessary for the project. The City also paid for construction of a storm drainage system. But it
neither contracted with nor provided instruction to DWC. In the words of DWC's designated
representative, the City had nothing to do with the project.

 On July 28, 1999, at approximately 1:30 a.m., Martin Alvarado was driving north on
Doniphan Drive. He was intoxicated and fatigued. As Alvarado approached the intersection, he fell
asleep. His vehicle struck the barricade barrels and the directional light generator that was directing
the northbound traffic into one lane. The vehicle continued traveling north approximately 500 feet
until it came to a stop in the right northbound lane where it blocked northbound traffic. The
directional light generator was moved approximately 150 feet north and propelled into the middle
of Doniphan's two southbound lanes where it lay on its side and partially blocked both lanes. 
Several of the barricade barrels were moved as well.

 At 1:36 a.m., the El Paso Police Department dispatch received a 9-1-1 call reporting the
accident. An EMS unit was dispatched at 1:37 a.m. and a police unit was dispatched at 1:38 a.m. 
The EMS unit arrived at the scene of the accident first and parked the vehicle in the median such that
it blocked the northbound lanes of Doniphan. Alvarado's vehicle was positioned in the right lane
and the EMS vehicle was to its left.

 Officers Raul Garcia and Arcadio Alcantar responded to the dispatch and approached the
scene of the accident, arriving at 1:53 a.m. The officers asked one of the EMS technicians for details
and discovered that Alvarado had hit something down the road. They drove south on Doniphan to
investigate and found the light generator laying on its side in the middle of the road. After
determining that the sign was much too large to be moved without a wrecker, the officers called for
assistance at 1:55 a.m. The generator was "very visible" and the surrounding area was well lighted. 
Consequently, the officers did not place any flares on the road to alert drivers to the sign. Because
they were concerned that someone would run into the EMS unit or Alvarado's vehicle, they left the
site of the generator and returned to the scene of the accident. In the process, they observed two
vehicles which were able to pass the downed directional light generator without hitting it. The
officers positioned their police vehicle behind Alvarado's and activated the flashing emergency
lights.

 Eduardo Segura left a nearby bar a little before 1:30 a.m. and drove his motorcycle south on
Doniphan. His girlfriend followed behind in her vehicle. Segura was driving closely behind another
vehicle and did not see the damaged directional sign lying on the road. (2) Segura crashed into the light
generator at 1:56 a.m., a mere three minutes after the officers had first arrived on the scene. Upon
hearing the accident, the police immediately reported it to dispatch and requested another EMS unit. 
The officers then transported one of the EMS technicians already on the scene to assist Segura. 
Sobriety tests were not conducted on Segura, but the odor of alcohol was detected. A second police
unit manned by Officer Juan Luis Deluna arrived at 1:58 a.m., just after Segura's accident. Segura's
girlfriend ultimately told Deluna that Segura had been drinking.

 Segura brought suit against the City, Alvarado, and DWC alleging a variety of causes of
action. Significant to our analysis is the fact that in his fifth and sixth amended petitions, Segura
specifically alleged that City employees responding to an emergency call or reacting to an emergency
situation acted with conscious indifference or reckless disregard to and for the safety of others. The
City sought summary judgment pursuant to both Rule 166(a)(c) and 166a(i), alleging that it had
established the emergency exception as a matter of law and that Segura had no evidence that the
officers acted with conscious indifference or reckless disregard for the safety of others.

THE STATUTE


 The Texas Tort Claims Act provides that a governmental unit is liable for:

 (1) property damage, personal injury, and death proximately caused by the wrongful
act or omission or the negligence of an employee acting within his scope of
employment if:


 (A) the property damage, personal injury, or death arises from the operation
or use of a motor-driven vehicle or motor-driven equipment; and 


 (B) the employee would be personally liable to the claimant according to
Texas law; and 


 (2) personal injury and death so caused by a condition or use of tangible personal or
real property if the governmental unit would, were it a private person, be liable to the
claimant according to Texas law.


Tex.Civ.Prac.&Rem.Code Ann. § 101.021 (Vernon 1997). Additionally, a governmental entity
owes a duty for premise defects and special defects. Tex.Civ.Prac.&Rem.Code Ann. § 101.021. 
Under the emergency exception, however, a governmental unit specifically retains its immunity in
claims arising from:

 [T]he action of an employee while responding to an emergency call . . . if the action
is in compliance with the laws and ordinances applicable to emergency action, or in
the absence of such a law or ordinance, if the action is not taken with conscious
indifference or reckless disregard for the safety of others.


Tex.Civ.Prac.&Rem.Code Ann. § 101.055(2). Although the latter statute is usually applied in
traffic accidents involving emergency vehicles, its application is not limited to those circumstances. 
City of Arlington v. Whitaker, 977 S.W.2d 742, 745 (Tex.App.--Fort Worth 1998, pet. denied). 
There, a deputy fire chief parked his official vehicle across several lanes of traffic to protect
oncoming cars from rushing flood waters. He activated his emergency lights and siren, yet the
plaintiff drove past the officer with no visible response to or acknowledgment of the emergency
vehicle and was swept into the waters where he drowned. His heirs filed suit under a special defect
theory of liability. In upholding the City's immunity, the court determined that the emergency
exception overrides the waivers contained within Sections 101.021 and 101.022 of the Act. Id. at
744. We agree. Consequently, if we determine that summary judgment was appropriate based on
the emergency exception, it is irrelevant whether the generator constituted motor driven equipment,
whether the City "used" it as contemplated by the statute, whether the City engaged in a joint
enterprise with DWC in the road construction project, or whether the position of the generator in the
roadway presented a premises or special defect.

STANDARD OF REVIEW


 A traditional summary judgment is proper if the record demonstrates there is no genuine issue
as to any material fact and that the movant is entitled to judgment as a matter of law. See
Tex.R.Civ.P. 166a(c). The purpose of summary judgment is the elimination of patently
unmeritorious claims or untenable defenses; it is not intended to deprive litigants of their right to a
full hearing on the merits of any real issue of fact. Collins v. County of El Paso, 954 S.W.2d 137,
145 (Tex.App.--El Paso 1997, pet. denied); Gulbenkian v. Penn, 151 Tex. 412, 416, 252 S.W.2d 929,
931 (1952). Unlike other final judgments reviewed on appeal, we do not review the summary
judgment evidence in the light most favorable to the judgment of the trial court. Collins, 954 S.W.2d
at 145; Continental Savings Association v. Collins, 814 S .W.2d 829, 831-32 (Tex.App.--Houston
[14th Dist.] 1991, no writ). The movant for summary judgment has the burden of showing there is
no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. 
Nixon v. Mr. Property Management Co., Inc., 690 S.W.2d 546, 548-49 (Tex. 1985). In deciding
whether there is a disputed material fact issue precluding summary judgment, all admissible evidence
favorable to the non- movant will be taken as true; every reasonable inference must be indulged in
favor of the non-movant and all doubts resolved in the non-movant's favor. Collins, 954 S.W.2d at
145. 

SOVEREIGN IMMUNITY

 The Texas Tort Claims Act does not create a cause of action. City of Tyler v. Likes, 962
S.W.2d 489, 494 (Tex. 1997); Scott v. Britton, 16 S.W.3d 173 (Tex.App.--Houston [1st Dist.] 2000,
no pet.). Rather, it merely waives sovereign immunity allowing the State to be sued under particular
circumstances. Id. A municipality is immune from liability for its governmental functions unless
that immunity is specifically waived. City of LaPorte v. Barfield, 898 S.W.2d 288, 291 (Tex. 1995);
City of El Paso v. Hernandez, 16 S.W.3d 409, 414 (Tex.App.--El Paso 2000, pet. denied); Gonzales
v. City of El Paso, 978 S.W.2d 619, 622 (Tex.App.--El Paso 1998, no pet.). 

 In Issue 11, the City of El Paso argues that the trial court erred in denying its motion for
summary judgment because it established the affirmative defense contained within the emergency
exception as a matter of law and Segura offered no evidence to raise a fact issue as to whether the
officers acted with conscious indifference or reckless disregard. Tex.Civ.Prac.&Rem.Code Ann.
§ 101.055(2) & § 101.062. For the reasons that follow, we agree.

Judicial Admission of Emergency Response


 As we noted earlier, Segura specifically pled that the officers were responding to an
emergency in his fifth and sixth amended petitions, the latter being the live pleading at the time of
the summary judgment hearing. Assertions of fact not pled in the alternative in the live pleadings
of a party are regarded as formal judicial admissions. Houston First Am. Sav. v. Musick, 650 S.W.2d
764 (Tex. 1983); Beta Supply, Inc. v. G.E.A. Power Cooling Systems, Inc., 748 S.W.2d 541, 542
(Tex.App.--Houston [1st Dist.] 1988, writ denied). Certainly Segura pled other theories of liability. 
But he did not alternatively plead that the officers were not responding to an emergency such that
the exception did not apply. Although he later urged in response to the motion for summary
judgment that there were fact issues as to whether an emergency situation existed, he never amended
his pleadings. As long as pleadings remain unamended, the facts are accepted as true by the court,
are binding on the party making them, and contradictory evidence may not be introduced. Id.,
De La Fuente v. Home Savings Ass'n, 669 S.W.2d 137, 145 (Tex.App.--Corpus Christi 1984, no
writ). The record reflects that there are no laws or ordinances mandating specific police policy or
procedures when dealing with an accident or securing an accident scene. Nor is there a local policy
addressing when the officers should have moved the downed directional light. The only question
remaining, then, is whether the City established that the officers did not act with conscious
indifference or reckless disregard.

Conscious Indifference or Reckless Disregard


 The Texas Supreme Court has defined the phrase "conscious indifference or reckless
disregard" as imposing liability for reckless operation of an emergency vehicle in an emergency
situation. City of Amarillo v. Martin, 971 S.W.2d 426, 430 (Tex. 1998). "To recover damages
resulting from the emergency operation of an emergency vehicle, a plaintiff must show that the
operator has committed an act that the operator knew or should have known posed a high degree of
risk of serious injury." Id. While the statute imposes a duty to avoid negligent driving, it only
imposes liability for reckless conduct. Id. at 431. We turn now to the summary judgment evidence.

 Captain Roy Davis, Jr., the Operational Support Services Division Commander and eighteen
year police veteran, explained the customary course for dealing with an object blocking a roadway:

 The first priority, of course, is to locate and identify any parties who might have been
involved in the collision and assess any possible injuries and get medical attention
on the way immediately, if that is necessary.


 Once that is done, of course the next step is to secure the area, to provide some sort
of traffic control plan, traffic safety diversions for traffic that is going to be coming
onto that scene. 


Officer Garcia testified in similar fashion. In his affidavit, he explained:


 I saw the directional light generator was laying on its side in the middle of the road. 
It looked too heavy for us to move by ourselves. I knew we needed help so I called
for help to control traffic. I determined that southbound traffic could see the
generator and maneuver around it. Because the generator was visible and motor
vehicles could maneuver around it, and because of my concern for the safety of the
driver of the accident vehicle and the EMS technicians, I decided to drive back to
Mr. Alvarado's vehicle to control the traffic there. At the time I was faced with
having to control traffic at two different locations. Under the circumstances I was
presented, my using the police unit to protect the safety of the EMS personnel and the
injured driver was a higher priority than to control traffic at the site of the generator.


 It was also too dangerous for a single police officer without a vehicle with overhead
lights to remain in front of the generator to control traffic. It was late at night, the
bars were closing, and it was no time for a pedestrian to be out on the road. I turned
around and drove back north on Doniphan.


 While driving north, two motor vehicles drove by going south without hitting the
generator. I positioned the patrol car behind Mr. Alvarado's vehicle and parked it
there with the overhead lights on. Before I could get out of the car, I saw and heard
a motorcycle driving south very fast. The motorcycle never slowed down while he
was approaching and passing us. That is when the motorcycle accident occurred. 


No disciplinary proceedings were instituted against any of the officers involved in the incident. The
witnesses testified concerning the officers' conduct in prioritizing the safety of Alvarado and the
EMS personnel. The police vehicle had the emergency lights activated and it was positioned such
that Segura had to pass by it before coming upon the generator. The generator itself was in a well
lighted area and was easily visible. Other motorists had no difficulty avoiding it. Testimony was
offered as to the danger of a single officer remaining by the generator without an accompanying
vehicle. Immediate steps were taken to summon additional units to cover the site where the
generator came to rest. It was far too heavy to be removed by the officers and they sought the
assistance of a wrecker. Not a single witness testified that the officers were reckless. 

 We conclude that the City of El Paso was entitled to prevail on its defense of sovereign
immunity. Accordingly, the trial court erred in denying the motion for summary judgment. We
sustain Issue 11. Because this issue is dispositive, we need not address the remainder. The order
of the trial court is reversed judgment is rendered in favor of the City of El Paso.



March 13, 2003 

 ANN CRAWFORD McCLURE, Justice


Before Panel No. 1

Larsen, McClure, and Chew, JJ.

1. The contract specifies the type, color, size, exact location, and height of the reflective material to be used,
the number of barrels, and the type of barricades. 
2. Officer Garcia believed Segura was traveling at least 70 m.p.h. although the posted speed limit was 40 m.p.h. 
He described how he could hear the motorcycle coming and Segura "just zoomed by me at a pretty good rate. . . . [h]e
didn't even slow down for the accident" as he passed the police car with its lights flashing.