Opinion issued April 19, 2007











In The

Court of Appeals

For The

First District of Texas






NO. 01-04-01084-CV






THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE

AND GLENDA PIERSON, Appellants


V.


LINDA THOMAS AS PERSONAL REPRESENTATIVE FOR THE
ESTATE OF DAMON HOLLIMON, DECEASED, AND

ASHLEY DOMINIQUE HOLLIMON, Appellees






On Appeal from the 278th District Court

Walker County, Texas

Trial Court Cause No. 20,377-C






O P I N I O N

 Appellants, The Texas Department of Criminal Justice (TDCJ) and Glenda
Pierson (Pierson), bring this interlocutory appeal of the orders of the trial court
denying TDCJ's plea to the jurisdiction and Pierson's motion for summary judgment. (1) 
TDCJ's plea asserted sovereign immunity from suit, and Pierson's motion for
summary judgment asserted qualified immunity. We reverse and render. 

BACKGROUND


 The deceased, Damon Hollimon, was incarcerated in TDCJ's Estelle Unit in
Huntsville, Texas and was in a sex-offender treatment program. He had been
diagnosed as paranoid-schizophrenic, but had been in remission and was not taking
any medication. However, because his condition was deteriorating and he was
becoming increasingly tense, agitated, defensive, and violent, the decision was made
to transfer Hollimon to a psychiatric unit. A "move team" of five officers was sent
to Hollimon's cell. Pierson, a University of Texas Medical Branch (UTMB) nurse,
was called in to advise whether there was any reason that pepper spray should not be
used to subdue Holliman and to provide medical assistance as needed during the
move. Pierson and the members of the move team were wearing gas masks. After
reviewing Holliman's medical chart, Pierson found no reason why chemical restraint
should not be used. Pierson, in her notes, recorded the time of various events in this
forced move.

 The move team first asked Holliman to leave his cell at 3:21 p.m., and
Holliman refused. At 3:22, a member of the team discharged a canister of pepper
spray in Holliman's direction. Holliman coughed, but refused to move. The officer
waited two minutes, then discharged a second canister of pepper spray, with the same
result. After another two minutes, the officer discharged a third canister, but
Hollimon still refused to move. At 3:28 p.m., the officers entered the cell to force
Hollimon out, and Hollimon, who was described as having a "well developed, well
nourished, muscular" body, resisted. The ensuing struggle resulted in a "major use
of force" by the team, with Hollimon face-down on the floor and an officer pressing
his knee down on the back of Hollimon's neck as other officers secured Hollimon's
hands and feet. At 3:31 p.m., the hand and leg restraints were in place, and Hollimon
was on his side in the cell. A second 3:31 entry, the last entry by Pierson, noted that
Hollimon was brought out of the cell and summarized the actions that resulted in
Hollimon's arrival at the medical department. (2) 

 As the officers picked Hollimon up and moved him out of the cell, Pierson saw
that his neck was limp and his head was "wobbly" and thought that his neck had been
broken. She checked his vital signs and found that he had no carotid pulse, no heart
rate, was not breathing, and had fixed and dilated pupils. Pierson testified that she
did not remove her gas mask to perform cardiopulmonary resuscitation because she
would then have been exposed to the pepper spray and would have needed medical
attention herself and thus would not have been of any assistance to Hollimon. After
checking Hollimon's vital signs, Pierson told the officers to take Hollimon to the
medical department "now."

 The move team carried Hollimon toward the prison medical department, which, 
according to trial testimony, was a one-and-one-half to two-and-one-half minute walk
from the cell. They had to go down a flight of stairs and pass through a "wing picket
gate," which was locked. However, the guard was not on duty, and they had to find
another guard to unlock the gate. Medical personnel were waiting on the other side
of the gate with a stretcher and took Hollimon across the hall to the medical
department. Hollimon arrived at the medical department at 3:38 p.m., seven minutes
after he was removed from the cell. Cardiopulmonary resuscitation was attempted,
but Hollimon did not respond and was pronounced dead. An autopsy disclosed that
Hollimon died from asphyxiation, and Pierson and members of the move team wrote
reports of the incident. TDCJ investigated the incident, and the Walker County
District Attorney conducted a criminal investigation, but no charges were filed. 

 On June 12, 1998, four months after Hollimon's death, an attorney wrote to the
warden of the Estelle Unit as follows: 

 I write this letter on behalf of the surviving daughter, and the
personal representative of the Estate of Damon L. Hollimon. Ashley D.
Hollimon, a minor, is the sole surviving child of Damon L. Hollimon. 
Linda Thomas, Ashley's mother, is the personal representative of the
Estate of Damon L. Hollimon. Please see attached Affidavit of Personal
Representative, Affidavit of Heirship, and Death Certificate of Damon
L. Hollimon. 


 As evidenced by the Death Certificate, Mr. Hollimon died of
asphyxiation on February 18, 1998, while an inmate at the Estelle Unit
of the Texas Department of Corrections. 


 At this time, I request copies of medical records, investigative
reports, and video tapes relating in any way to the death and the
circumstances surrounding the death of Mr. Hollimon. If there is a
charge for these documents, please advise. 


 On February 12, 1999, appellees (3) sued TDCJ, its executive director, the warden
of the Estelle Unit, and unnamed prison guards, asserting causes of action under the
Texas Tort Claims Act, (4) wrongful death and survival statutes, (5) and section 1983 (6) for
violations of civil rights. In an amended petition, appellees added UTMB, Pierson
individually and in her capacity as nurse for UTMB, and nine employees of TDCJ. 
UTMB filed a plea to the jurisdiction, asserting sovereign immunity from suit for the
wrongful death claim and arguing that appellees' claims against UTMB did not fall
under the Texas Tort Claims Act. The trial court granted UTMB's plea and dismissed
the claims against UTMB. Pierson filed a similar plea to the jurisdiction, which the
court granted, and the claims against her in her official capacity were dismissed. 
Appellees filed a second amended petition in which they asserted only a section 1983
claim against Pierson individually and a claim under the Texas Tort Claims Act
against TDCJ. TDCJ filed a plea to the jurisdiction asserting sovereign immunity and
a motion for summary judgment asserting lack of notice. The trial court denied these
motions. Pierson filed a motion to dismiss and motion for summary judgment, which
the court also denied. This appeal followed. 

DISCUSSION


TDCJ's Appeal: Notice 

 In September 2005, TDCJ filed a supplemental brief, asserting for the first time
lack of notice as a jurisdictional bar to the suit. See Tex. Ass'n of Bus. v. Tex. Air
Control Bd., 852 S.W.2d 440, 445 (Tex. 1993) ("Subject matter jurisdiction is an
issue that may be raised for the first time on appeal; it may not be waived by the
parties."). Therefore, we first consider TDCJ's notice issue. TDCJ asserts, "The
absence of notice under Texas Civil Practice and Remedies Code § 101.101 divests
the trial court of subject-matter jurisdiction. Section 101.101 provides as follows:

 (a) A governmental unit is entitled to receive notice of a claim
against it under this chapter not later than six months after the day that
the incident giving rise to the claim occurred. The notice must
reasonably describe: 

 (1) the damage or injury claimed;

 (2) the time and place of the incident; and

 (3) the incident.

 . . . .

 (c) The notice requirements provided or ratified and approved by
Subsections (a) and (b) do not apply if the governmental unit has actual
notice that death has occurred, that the claimant has received some
injury, or that the claimant's property has been damaged. 


Tex. Civ. Prac. & Rem. Code Ann. § 101.101 (Vernon 2005). Texas courts of
appeals have been divided in determining what constitutes "actual notice" for the
purpose of this statute and in how they treat the lack of notice. The supreme court
settled the issue of what constitutes actual notice in Texas Department of Criminal
Justice v. Simons. 140 S.W.3d 338 (Tex. 2004). In that case, the court held "that
actual notice under section 101.101(c) requires that a governmental unit have
knowledge of the information it is entitled to be given under section 101.101(a) and
a subjective awareness that its fault produced or contributed to the claimed injury." 
Id. at 348 (emphasis added). The court explained that the purpose of the statute is "to
enable governmental units to gather information necessary to guard against
unfounded claims, settle claims, and prepare for trial." Id. at 347 (quoting Cathey v.
Booth, 900 S.W.2d 339, 341 (Tex. 1995)). However, investigation of an incident
alone is not enough to show that a governmental unit has actual knowledge of an
injury. Id. "If a governmental unit is not subjectively aware of its fault, it does not
have the same incentive to gather information that the statute is designed to provide,
even when it would not be unreasonable to believe that the governmental unit was at
fault." Id. at 347-48. The court recognized that, although "actual notice is a fact
question when the evidence is disputed," it is, in many instances, a question of law. 
Id. at 348. The court also stated that subjective awareness may sometimes be proved
by circumstantial evidence, but the subjective awareness must be actual subjective
awareness of its fault. Id. (emphasis added). 

 On the same day that it decided Simons, the supreme court decided University
of Texas Southwestern Medical Center v. Loutzenhiser. 140 S.W.3d 351 (Tex. 2004). 
In Loutzenhiser, another section 101.101 notice case, the court held "that the plaintiff
did not give notice within the six-month period as required, that lack of notice is a
complete defense to suit but does not deprive the court of subject matter jurisdiction,
and that the defendant did not waive its complaint of no notice by delaying to raise
it." Id. at 354. Thus, under Loutzenhiser, lack of notice would have been asserted as
a defense in a motion for summary judgment or some other pleading. It would not
have been asserted in a plea to the jurisdiction. However, after the court decided
Loutzenhiser, the legislature amended the Government Code to clarify the
legislature's intent with regard to the relationship between statutory prerequisites to
a suit and sovereign immunity. The legislature added to section 311.034 of the
Government Code the following language: "Statutory prerequisites to a suit,
including the provision of notice, are jurisdictional requirements in all suits against
a governmental entity." Tex. Gov't Code Ann. § 311.034 (Vernon Supp. 2006). 
This amendment took effect on September 1, 2005. 

 TDCJ contends that it did not have notice as required under section 101.101,
and that, therefore, the trial court did not have jurisdiction over appellees' complaint. 
Appellees respond that TDCJ had both statutory notice and actual notice of their
claim. Appellees argue that the letter sent by their counsel to the warden of the
Estelle unit was the formal notice of their claim as required by section 101.101(a). 

 Counsel's letter to the warden is not a notice of a claim by appellees against
TDCJ. Although it refers to Hollimon's death (the damage or injury) and gives the
date of the death at the Estelle Unit (the time and place), it does not describe the
incident. Thus, the letter does not meet the requirements of section 101.101(a), but
is merely a request for additional information regarding Hollimon's death. 

 Appellees contend that a letter from TDCJ's general counsel acknowledging
receipt of appellees' letter and advising that the matter was being investigated and
that the "releasability of information" would depend on the results of the
investigation is a "clear and unequi[vocal] admission . . . that TDCJ may have fault"
in the death of Hollimon. Appellees find additional evidence of TDCJ's subjective
awareness of fault in a second letter from TDCJ stating that the information they were
seeking was contained in "an on-going criminal investigation" and that TDCJ was
unable to release any information at that time. 

 The fact that TDCJ investigated the circumstances of Holliman's death or that
the Walker County District Attorney also investigated the death is not evidence that
TDCJ had subjective awareness that it was at fault in that death. See Simons, 140
S.W.3d at 347-48 ("It is not enough that a governmental unit . . . did investigate . . .
or that it should have known from the investigation it conducted that it might have
been at fault. If a governmental unit is not subjectively aware of its fault, it does not
have the same incentive to gather information that the statute is designed to provide
. . . ."). 

 Appellees' contention that the occurrence of an event provides actual notice if
fault is obvious and an investigation is triggered is without merit. Appellees support
this contention by quoting Angleton Danbury Hospital District v. Chavana, a pre-Simons case. 120 S.W.3d 424 (Tex. App.--Houston [14th Dist.] no pet.). Appellee's
contention is in direct conflict with Simons, which states that "actual notice that an
injury has occurred is not enough to satisfy section 101.101(c) [actual notice]." 

 Appellees' argument that the reprimand of a guard who was not at his station
at the wing picket gate is evidence that TDCJ had subjective awareness of its fault is
without support in the record. There is no evidence of whether, how, or why any
TDCJ employee was reprimanded in connection with Hollimon's death. Likewise,
there is no evidence that TDCJ had subjective awareness that it was at fault in
Hollimon's injury or death.

 Accordingly, we sustain TDCJ's issue regarding notice. Because the notice
requirement is jurisdictional, we need not reach TDCJ's issue regarding sovereign
immunity.

Pierson's Appeal

 In two issues, Pierson contends that her motion for summary judgment should
have been granted because (1) she did not violate Hollimon's rights under the Eighth
Amendment and (2) she is entitled to qualified immunity. Because these issues are
closely related, we consider them together. 

 Section 1983 creates a private right of action for violations of an individual's 
federally guaranteed rights by those acting under color of state law. See Richardson
v. McKnight, 521 U.S. 399, 403, 117 S. Ct. 2100, 2103 (1997). The doctrine of
qualified immunity shields an official performing discretionary functions from
liability for civil damages under section 1983, provided the official's conduct does
not violate clearly established constitutional or statutory rights of which a reasonable
person would have been aware. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct.
2727, 2738 (1982); Thomas v. Collins, 860 S.W.2d 500, 503 (Tex. App.--Houston
[1st Dist.] 1993, writ denied). A legal right is "clearly established" when the
"contours of the right [are] sufficiently clear that a reasonable official would
understand that what he is doing violates that right." Anderson v. Creighton, 483
U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987). 

 When a governmental official asserts the affirmative defense of qualified
immunity by pleading good faith and demonstrating that his actions were within his
discretionary authority, the burden shifts to the plaintiff to show that the defendant's
conduct violated clearly established statutory or constitutional rights of which a
reasonable person would have been aware. Thomas, 860 S.W.2d at 503; see also 
Whatley v. Philo, 817 F.2d 19, 20 (5th Cir. 1987). The plaintiff must show that (1)
the official's conduct violated a federally guaranteed right, (2) the right was clearly
established, and (3) the official's conduct was objectively unreasonable in light of the
clearly established right. Thomas, 860 S.W.2d at 503. Objective reasonableness is
a question of law for the court. Hare v. City of Corinth, 135 F.3d 320, 328 (5th Cir.
1998); see also Poteet v. Sullivan, No. 2-05-338-CV, 2007 WL 289871 (Tex.
App.--Fort Worth Feb. 1, 2007, pet. filed) (recognizing that objective reasonableness
is matter of law).

 An official is not liable for the failure to provide medical care to an inmate
unless that failure was due to deliberate indifference to his medical needs. Estelle v.
Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976). The test for determining
deliberate indifference is subjective, not objective. Farmer v. Brennan, 511 U.S. 825,
837, 114 S. Ct. 1970, 1979 (1994). "[T]he official must both be aware of facts from
which the inference could be drawn that a substantial risk of serious harm exists, and
he must also draw the inference." Id. To establish that an official acted with
deliberate indifference, a plaintiff must prove that the official acted with subjective
recklessness by consciously disregarding a substantial risk of serious harm. Scott v.
Britton, 16 S.W.3d 173, 181 (Tex. App.--Houston [1st Dist.] 2000, no pet.) (citing
Farmer, 511 U.S. at 838-39, S. Ct. at 1979-80)). An official's failure to perceive and
to alleviate a risk is not an infliction of punishment. Id. Moreover, negligent medical
treatment is not a violation of section 1983. Estelle, 429 U.S. at 106, 97 S. Ct. at 292. 

 In their second amended original petition, appellees asserted a claim against
Pierson individually under section 1983, alleging that her actions violated Hollimon's
Eighth Amendment rights. Appellees alleged that Pierson's failure to attempt
cardiopulmonary resuscitation (CPR) on Hollimon cell-side or at the wing picket gate
showed her conscious indifference to Hollimon's condition. 

 In her motion for summary judgment, Pierson asserted, among other things,
that she was protected from appellees' claims by the doctrine of qualified immunity. 
She attached her own affidavit in which she asserted that her actions were taken in
good faith. Her affidavit and that of Kleanthe Caruso, Director of Nursing,
Medical/Surgical Services and TDCJ Hospital Nursing for UTMB, who had almost
20 years of experience in correctional nursing, established that Pierson's actions were
within her discretionary authority. Caruso's affidavit also stated that she had
reviewed the medical records of Hollimon, and that, based upon her training and
experience, it was her opinion that Pierson's actions were appropriate, that there was
no medical reason why pepper spray could not be used to subdue Hollimon, that
Pierson could not have performed CPR cell-side because of the pepper spray in the
air, that Pierson should not have attempted CPR in the absence of any personal
protective equipment, that it was appropriate for Pierson to have Hollimon transferred
to the medical unit for CPR, and that Pierson could not have anticipated the delay in
getting Hollimon to the medical unit. 

 In response, appellees argued that Pierson's failure to attempt CPR was
"wholly unreasonable" and reiterated the facts of the case. Appellees attached as
summary judgment proof Caruso's affidavit; deposition excerpts of Pierson, Marc
Rodriquez, a prison guard, and Dr. Sparks Veasey, the pathologist who performed the
autopsy on Hollimon; and Pierson's affidavit. These attachments generally confirmed
the facts as already stated. 

 In their brief, appellees state that from the cell to the medical department was
"about a two minute trip" and that the group moving Hollimon waited
"approximate[ly] five minutes . . . for the gate to be unlocked." The record does not
support these statements. When asked how long it would take to go from the cell to
the medical department if one "just walked it," M. Rodriguez, one of the guards,
answered, "Between a minute and a half, two minutes, two and a half minutes." 
However, the guards were not "just" walking the distance; they were carrying
Hollimon, a well-developed, well-nourished, muscular man. Moreover, they did not
begin their walk at 3:31 p.m. They brought Hollimon out of the cell and put him on
the floor. Pierson then checked his carotid pulse, his pupils, his breathing, and his
heartbeat, and, finding no response, directed the guards to take him to medical,
"now." After the wing picket gate was opened, Hollimon was lifted onto a stretcher
and taken to the medical department. There is no evidence in the record to establish
how long the group waited for the gate to be unlocked, but it was clearly less than
five minutes. 

 When asked how long they waited for the gate to be unlocked, Pierson
answered, "I don't know how long it was. It didn't seem like very long." When
asked why she did not give Hollimon CPR at the bottom of the stairs (at the gate), she
responded, "I felt like it was probably better to get him on over to medical, right
across the hall, with help." She testified that a person becomes brain dead after six
minutes without oxygen. When asked if it took six minutes to get Hollimon from the
cell to the medical department, she said, "I was not aware of the time element. All I
can say is I remember it - - it just didn't seem like it was long at all. It's just like it
happened so fast." 

 Pierson's actions in checking Hollimon's vital signs and her reasons for not
giving him CPR do not show subjective deliberate indifference to Hollimon's
condition. Because appellees have not established that Pierson acted with deliberate
indifference, Pierson cannot be liable for the failure to provide medical care to
Hollimon. See Estelle, 429 U.S. at 104, 97 S. Ct. at 291. Moreover, considering her
actions in the context of the deliberate-indifference standard, we hold that her
decision not to give Hollimon CPR was not objectively unreasonable. 

 Because appellees have not proved that Pierson was deliberately indifferent to
Hollimon's condition, they have not met their burden of rebutting Pierson's qualified-immunity defense. Accordingly, we sustain Pierson's issues. 

CONCLUSION


 We reverse the trial court's order denying TDCJ's plea to the jurisdiction and
render judgment dismissing appellees' claims against TDCJ for want of jurisdiction. 

 We reverse the trial court's order denying Pierson's motion for summary
judgment and render judgment that appellees take nothing by their suit against
Pierson. 



 Sam Nuchia

 Justice


Panel consists of Justices Nuchia, Keyes, and Hanks.


Justice Keyes, dissenting.

1. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(5), (8) (Vernon Supp. 2006).
2. That final entry consisted of the following: 


 1531 Offender is brought out of the cell by SORT, and noted head wobbly. 
Unable to palpate carotid pulse. . . . Pupils dilated 4-5mm. Unable to
ausculate heart beat. Security informed carry to medical department now. 
Medical assistance upon arrival to door out of A wing. Placed on stretcher and
to med dept. -- SPierson RN
3. During the pendency of this lawsuit, Ashley Dominique Hollimon reached her
majority and joined the suit in her individual capacity. 
4. Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-109.109 (Vernon 1997 &
Supp. 2006).
5. Tex. Civ. Prac. & Rem. Code Ann. §§ 71.001-71.052 (Vernon 1997 & Supp.
2006). 
6. 42 U.S.C. § 1983 (2000).