The UNIVERSITY OF TEXAS SOUTH-WESTERN MEDICAL CENTER AT DALLAS, Petitioner,

v.

Donna LOUTZENHISER, As Next Friend of Stephen Luke Loutzenhiser, a Minor, Respondent.

No. 02–0894.

Supreme Court of Texas.

Argued Jan. 7, 2004.

Decided July 9, 2004.

---

**4.** 103 S.W.3d at 641–642.

**5.** 140 S.W.3d 338, 348, 2004 WL 1533264

(Tex.2004).

Greg Abbott, Atty. Gen. of Texas, Howard G. Baldwin, First Asst. Atty. Gen. of Texas, Jeffrey S. Boyd, Thompson & Knight, Nelly R. Herrera, Philip A. Lionberger, Brown McCarroll, L.L.P., Barry Ross McBee, Rafael Edward Cruz and Ryan D. Clinton, Austin, for petitioner.

Mary Olga Ferguson, Thompson & Knight, Houston, Michael R. Mitchell, Mitchell Goff & Mitchell, LLP, Philipa Remington, Stinnett Thiebaud & Remington, Dallas, and Thomas H. Bleakley, Grosse Pointe Farms, MI, for respondent.

Justice HECHT delivered the opinion of the Court, joined by Chief Justice PHILLIPS, Justice OWEN, Justice JEFFERSON, Justice WAINWRIGHT, and Justice BRISTER.

The Texas Tort Claims Act provides that "[s]overeign immunity to suit is waived and abolished to the extent of liability created by [the Act]." [1] Section 101.101(a) of the Act states:

A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:

(1) the damage or injury claimed;

(2) the time and place of the incident; and

(3) the incident.[2]

---

1. Tex. Civ. Prac. & Rem.Code § 101.025(a).  2. *Id.* § 101.101(a).

Section 101.101(c) makes this requirement inapplicable "if the governmental unit has actual notice ... that the claimant has received some injury".[3] In this case we hold that the plaintiff did not give notice within the six-month period as required, that lack of notice is a complete defense to suit but does not deprive the court of subject matter jurisdiction, and that the defendant did not waive its complaint of no notice by delaying to raise it. Accordingly, we modify the judgment of the court of appeals and affirm.[4]

# I

Donna Loutzenhiser's son Stephen was born with a severely deformed left hand which she claims was caused by a prenatal diagnostic test performed by a governmental unit—the University of Texas Southwestern Medical Center at Dallas [5]—more than six months earlier in her pregnancy. The test, a chorionic villus sampling (CVS), involves inserting a needle through the uterus into the chorion—the section of the placenta providing the fetus with nutrients via its blood supply—and removing a part of it for chromosomal testing. Limb reduction is a known risk of this procedure, particularly if performed early in a pregnancy. The first attempt, on January 21, 1992, did not collect the proper tissue, but a second procedure performed a week later did. Stephen was born on August 15, and seventeen days later, his father notified the Medical Center of Stephen's birth defect. In December 1994, Loutzenhiser and two other mothers, individually and on behalf of their respective children, sued the Medical Center alleging that its CVS testing caused birth defects.

In August 1996, one year and eight months after suit was filed, the Medical Center moved for summary judgment in part on the ground that its immunity from suit had not been waived under the Tort Claims Act because the plaintiffs had failed to give the six-month notice required by section 101.101(a), and therefore the court lacked jurisdiction over the case. Several months later, the trial court granted the motion as to all of the plaintiffs except Stephen.[6] At the time, the Medical Center could not appeal a refusal to dismiss a suit for want of jurisdiction based on sovereign immunity,[7] but two individual defendants could and did take an interlocutory appeal from the denial of their motion for summary judgment based on immunity.[8] That appeal ended in April 2001.[9] In

3. *Id.* § 101.101(c).

4. 137 S.W.3d 93 (Tex.App.-Dallas 2002).

5. *See* Tex. Civ. Prac. & Rem.Code § 101.001(3)(A) ("governmental unit" means "this state and all the several agencies of government that collectively constitute the government of this state"); Tex. Educ.Code §§ 65.02(a)(7) (the University of Texas System includes the University of Texas Southwestern Medical Center at Dallas and its specified components), 74.101 ("The University of Texas Southwestern Medical Center at Dallas is a component institution of The University of Texas System under the management and control of the board of regents of The University of Texas System."); *see University of Texas Med. Branch v. York,* 871 S.W.2d 175 (Tex. 1994) (treating a University of Texas medical school as a governmental unit under the Texas Tort Claims Act); *Lowe v. Texas Tech Univ.,* 540 S.W.2d 297, 298 (1976).

6. *See Lowe v. Teator,* 1 S.W.3d 819, 821 (Tex. App.-Dallas 1999, pet. denied).

7. *See* Act of May 27, 1997, 75th Leg., R.S., ch. 1296, 1997 Tex. Gen. Laws 4936, 4937 (adding subsection (8) to Tex. Civ. Prac. & Rem. Code § 51.014(a), allowing interlocutory appeals from orders granting or denying a plea to the jurisdiction by a governmental unit).

8. *Lowe,* 1 S.W.3d at 820–821.

9. *See* 44 Tex. Sup.Ct. J. 573 (Apr. 5, 2001) (order denying the motion for rehearing of the petition for review of the decision in *Lowe* ) (cause no. 99–0980).

July, the trial court set a trial date in February 2002.

In December 2001, seven weeks before trial and seven years after suit was filed, the Medical Center filed a plea to the jurisdiction, asserting as it had in its earlier motion for summary judgment that the court lacked jurisdiction because Loutzenhiser had not given notice as required by section 101.101(a). The Medical Center also asserted that Loutzenhiser had not pleaded a claim involving the use of tangible personal property within the Tort Claims Act's waiver of immunity.[10] The Medical Center cited new authority but also candidly acknowledged that it had filed the plea so that it could take an interlocutory appeal from an adverse ruling—a right created in 1997 [11] that it did not have when its motion for summary judgment was denied—further delaying trial of the case. The trial court treated the notice argument as a motion to reconsider its denial of the motion for summary judgment, which it denied, and treated the no-use-of-property argument as a special exception, which it sustained. Alternatively, the court held that the Medical Center had waived both arguments by waiting until the eve of trial to raise them and ordered that the plea be struck.

As promised, the Medical Center appealed.[12] The court of appeals affirmed, holding as it had previously that the lack of notice required by section 101.101(a) does not deprive a court of jurisdiction over a claim.[13] The court of appeals also held that the trial court had properly treated its no-use-of-property argument as a special exception and did not address the Medical Center's contention that it had not waived its notice argument by delay.[14]

The Medical Center filed a petition for review limited to the notice and waiver issues, which we granted.[15] We have jurisdiction over this interlocutory appeal [16] because the courts of appeals are in conflict over whether a court has jurisdiction over a claim, notice of which has not been given as required by section 101.101(a).[17]

---

10. *See* Tex. Civ. Prac. & Rem.Code § 101.021 ("A governmental unit in the state is liable for . . . (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.").

11. *Supra* note 7.

12. *See* Tex. Civ. Prac. & Rem.Code § 51.014(a)(8) ("A person may appeal from an interlocutory order of a district court . . . that . . . (8) grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001 [of the Tort Claims Act].").

13. 137 S.W.3d 93 (Tex.App.-Dallas 2002) (citing *Stanton v. Univ. of Tex. Health Sci. Ctr.*, 997 S.W.2d 628, 629 (Tex.App.-Dallas 1998, pet. denied)).

14. *Id.*

15. 47 Tex. Sup.Ct. J. 2 (Oct. 3, 2003).

16. Tex. Gov't Code §§ 22.001(a)(2), 22.225(b)(3), (c); *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 687–688 (Tex.2002).

17. *Compare National Sports & Spirit, Inc. v. Univ. of N. Texas*, 117 S.W.3d 76, 79 (Tex. App.-Fort Worth 2003, no pet.) (no jurisdiction); *Crane County v. Saults*, 101 S.W.3d 764, 768 (Tex.App.-El Paso 2003, no pet.) (same); *Texas Dep't of Transp. v. Blevins*, 101 S.W.3d 170, 174 (Tex.App.-Fort Worth 2003), *appeal dismissed per curiam*, 140 S.W.3d 337, 2004 WL 1533055 (Tex.2004) (same); *Texana Cmty. MHMR Ctr. v. Silvas*, 62 S.W.3d 317, 324 (Tex.App.-Corpus Christi 2001, no pet.) (same); *State v. Kreider*, 44 S.W.3d 258, 263–264 (Tex.App.-Fort Worth 2001, pet. denied) (same); *with University of Texas Sw. Med. Ctr. v. Loutzenhiser*, 137 S.W.3d 93 (Tex.App.-Dallas 2002) (jurisdiction), *judgment modified and aff'd*, 140 S.W.3d 351 (Tex.2004); *Martinez v. Val Verde County Hosp. Dist.*, 110 S.W.3d 480 (Tex.App.-San Antonio 2003) (same), *aff'd*, 140 S.W.3d 370, 2004 WL 1535239 (Tex.2004); *Stanton*, 997 S.W.2d at 629 (same).

## II

We first consider whether Loutzenhiser gave notice as required by section 101.101(a).

■ The Medical Center argues that Loutzenhiser was required to notify it of Stephen's claim that he had been injured by the CVS within six months of the date the procedure was performed, while Stephen was still *in utero*. Loutzenhiser argues that to require notice on behalf of a fetus would violate constitutional guarantees of due process, equal protection, and open courts. Loutzenhiser, according to her brief, "takes no position with respect to the rights of minors in general regarding the notice provisions of the [Tort Claims] Act," and thus we limit our consideration to the effect of the notice requirement on the rights of the person injured *in utero*. We need not reach Loutzenhiser's constitutional arguments because we disagree with the Medical Center's reading of the statute.

■ Section 101.101(a) requires "notice of a claim ... not later than six months after the day that the incident giving rise to the claim occurred." [18] As we have stated, "the longstanding common law rule [is] that the rights of a fetus [are] contingent on live birth." [19] Under this rule, Stephen legally had no claim against the Medical Center before he was born, even if his injury had been manifest when the CVS was performed (it was not). The Medical Center argues that "the incident giving rise to the claim" was the CVS, but the CVS was only *an* incident—one of two—giving rise to the claim. The other such incident, and one equally necessary to the existence of the claim, was Stephen's live birth. If the notice period ran from the CVS, the statute required notice of a nonexistent claim. "Courts should not read a statute to create such an absurd result." [20] We decline to do so here when

---

18. Tex. Civ. Prac. & Rem.Code § 101.101(a).

19. *Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 78 (Tex.1997) (citing *Witty v. Am. Gen. Capital Distribs., Inc.*, 727 S.W.2d 503, 505 (Tex.1987)) (also discussing *Krishnan v. Sepulveda*, 916 S.W.2d 478, 482 (Tex.1995); *Pietila v. Crites*, 851 S.W.2d 185, 186 (Tex. 1993); and *Yandell v. Delgado*, 471 S.W.2d 569, 570 (Tex.1971)). *Cf.* Act effective September 1, 2003, 78th Leg., R.S., ch. 822, §§ 1.01, 1.02, 1.03, and 1.04, 2003 Tex. Gen. Laws 2607, 2607–2608 (adding (3) (" 'Death' includes, for an individual who is an unborn child, the failure to be born alive.") and (4) (" 'Individual' includes an unborn child at every stage of gestation from fertilization until birth.") to Tex. Civ. Prac. & Rem.Code § 71.001, but at § 71.003 excluding such claims against, *e.g.*, a physician or health care provider for lawful medical practices or procedures, and providing that these changes "apply only to a cause of action that accrues on or after the effective date of this Act" and that actions accruing prior to that time are governed by prior law).

20. *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex.1996); *accord, C & H Nationwide, Inc. v. Thompson,* 903 S.W.2d 315, 322 n. 5 (Tex.1994) ("Statutory provisions will not be so construed or interpreted as to lead to absurd conclusions, great public inconvenience, or unjust discrimination, if the provision is subject to another, more reasonable construction or interpretation."); *Bridgestone/Firestone, Inc. v. Glyn–Jones*, 878 S.W.2d 132, 135 (Tex.1994) (Hecht, J., concurring) ("in some circumstances, words, no matter how plain, will not be construed to cause a result the Legislature almost certainly could not have intended"); *McKinney v. Blankenship*, 154 Tex. 632, 282 S.W.2d 691, 698 (1955) ("Unless there is no alternative, a statute will not be interpreted so as to lead to a foolish or absurd result."); *Cramer v. Sheppard*, 140 Tex. 271, 167 S.W.2d 147, 155 (1942) ("constitutional and statutory provisions will not be so construed or interpreted as to lead to absurd conclusions, great public inconvenience, or unjust discrimination, if any other construction or interpretation can reasonably be indulged in"); *see* Tex. Gov't Code

there is a reasonable alternative construction of the statutory language. Because Stephen's live birth was an incident giving rise to his claim, and one essential to the existence of the claim, we hold that the six-month period for giving notice began when Stephen was born.

The Medical Center argues that this construction of section 101.101 is inconsistent with our decision in *Brown v. Shwarts*, where we held that limitations on a claim for negligent prenatal treatment began to run when the treatment was completed.[21] But the controlling statute in *Brown* was materially different. There, the statute of limitations prescribed that a claim for negligent medical or health care treatment be brought within two years of the date the treatment was completed "[n]otwithstanding any other law".[22] The statute did not require the claim to be in existence when limitations began to run, something that we acknowledged could yield harsh results in certain circumstances.[23] But the two-year limitations period, even though it began running when prenatal care was rendered, could not operate to bar the child's claim before it came into existence because the limitations period was much longer than the gestation period.

■ The Medical Center argues that even if the notice period did not begin to run until Stephen was born, it did not receive notice of his claim until more than two years later when Loutzenhiser filed suit. Loutzenhiser argues that Stephen's father's telephone call to the Medical Center provided the required notice, but it clearly did not. The only evidence of the substance of that call was Stephen's father's testimony as follows:

I called after he was born to inform them that he had—the situation with his hand—he had no fingers, thinking that they would want to be made aware of that. The reason that I thought they may want to be made aware of that is because I thought it would be relevant to them, and that I had read in June or July a *Newsweek* article that said that CVS possibly causes limb reduction—is, I believe, the term that it used. And since it happened to my son, I thought that they would want to know about it.... [A]nd at that time I was told that it didn't have anything to do with the test, and they didn't act interested in finding out about it. And I said, "Would you like some information for your records?", and they never followed up on it.

Stephen's father thought the call lasted about five minutes, and he could not recall with whom he spoke. The most that can fairly be said from his testimony is that the Medical Center received notice from Stephen's father that Loutzenhiser had had a CVS procedure and that Stephen had been born with a limb reduction. It is not clear that the Medical Center was told that it had performed the CVS procedure; certainly it was not told the time. More

---

§ 311.021(3), (4) ("In enacting a statute, it is presumed that ... (3) a just and reasonable result is intended ... [and] (4) a result feasible of execution is intended ....").

**21.** 968 S.W.2d 331, 334 (Tex.1998).

**22.** *Id.* at 333 (construing Tex.Rev.Civ. Stat. Ann. art. 4590i, § 10.01, now codified as Tex. Civ. Prac. & Rem.Code § 74.251(a)).

**23.** *Id.* at 334 ("This means that an action for the wrongful death of a child who lives more

than two years after a prenatal injury will as a rule be barred by limitations, but the same result ensues when the decedent is an adult. While there are circumstances when this result will seem harsh, it is well within the Legislature's prerogative to prescribe the limitations period for a wrongful death claim which, it must be remembered, did not exist at common law and is a creature of statute.") (citation omitted).

importantly, the Medical Center had no "notice of a claim", as section 101.101(a) requires. Stephen's father stated only that he thought "they would want to be made aware" of Stephen's deformity "for [their] records".

Loutzenhiser argues that even if the Medical Center did not receive the notice required by section 101.101(a), it had actual notice which, under section 101.101(c), made the notice requirement in section 101.101(a) inapplicable. But actual notice that an injury has occurred is not enough to satisfy section 101.101(c); as we hold today in another case, a governmental unit must also have "a subjective awareness that its fault produced or contributed to the claimed injury." [24] There is no evidence that before suit was filed the Medical Center was ever subjectively aware, either from Stephen's father's telephone call or otherwise, that it was at fault for Stephen's deformity, as Loutzenhiser eventually alleged. Stephen's father's testimony suggests that the Medical Center had no such subjective awareness.

We therefore conclude that Loutzenhiser was required to give notice under section 101.101(a) and did not do so.

## III

The Medical Center argues that notice of a claim under section 101.101(a) is a condition of the waiver of the government's immunity from suit under the Tort Claims Act. We have held that a court lacks subject matter jurisdiction over a suit barred by immunity.[25] Thus, the Medical Center argues, the notice required by section 101.101(a) is jurisdictional. As noted above, the courts of appeals are divided on whether this notice provision is jurisdictional.[26]

In *Dubai Petroleum Co. v. Kazi*, we concluded that any inquiry into whether the Legislature intended a particular statutory requirement to be jurisdictional as opposed to mandatory[27] must be conducted in light of "the longstanding principle that subject-matter jurisdiction is a power that 'exists by operation of law only, and cannot be conferred upon any court by consent or waiver' ".[28] Not only *may* an issue of subject matter jurisdiction "be raised for the first time on appeal by the parties or by the court",[29] a court is *obliged* to ascertain that subject matter jurisdiction exists regardless of whether the parties have questioned it.[30] Even after all proceedings have long ago come to an end:

a judgment will never be considered final if the court lacked subject-matter jurisdiction. "The classification of a

**24.** *Texas Dep't of Crim. Justice v. Simons*, 140 S.W.3d 338, 348, 2004 WL 1533264 (Tex. 2004).

**25.** *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999) (per curiam) (citing *Federal Sign v. Tex. Southern Univ.*, 951 S.W.2d 401, 403 (Tex.1997)); *Duhart v. State*, 610 S.W.2d 740, 741 (Tex.1980); *Missouri Pac. R.R. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 814 (Tex.1970); *Walsh v. Univ. of Tex.*, 169 S.W.2d 993, 994 (Tex.Civ.App.-El Paso 1942, writ ref'd); *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847).

**26.** See *supra* note 17.

**27.** *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 494 (Tex.2001) ("Even if a statutory requirement is mandatory, this does not mean that compliance is necessarily jurisdictional.").

**28.** 12 S.W.3d 71, 76 (Tex.2000) (quoting *Federal Underwriters Exch. v. Pugh*, 141 Tex. 539, 174 S.W.2d 598, 600 (1943)).

**29.** *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445–446 (Tex.1993).

**30.** *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 853–854 (Tex.2000).

matter as one of [subject-matter] jurisdiction ... opens the way to making judgments vulnerable to delayed attack for a variety of irregularities that perhaps better ought to be sealed in a judgment." [31]

The failure of a non-jurisdictional requirement mandated by statute may result in the loss of a claim, but that failure must be timely asserted and compliance can be waived. The failure of a jurisdictional requirement deprives the court of the power to act (other than to determine that it has no jurisdiction), and ever to have acted, as a matter of law. Since the Legislature is bound to know the consequences of making a requirement jurisdictional, one must ask, in trying to determine legislative intent, whether the Legislature intended those consequences. In *Dubai*, we held that the Legislature did not intend the statutory requirements for suing in Texas for an injury or death that occurred in a foreign country to be jurisdictional and therefore subject to being raised at any time.[32] We follow the same analysis here.

We start with the statutory language. The language of section 101.101(a) is clearly mandatory, stating as it does that "[a]

governmental unit is *entitled* to receive notice".[33] The Code Construction Act instructs that " '[i]s entitled to' creates or recognizes a right." [34] Given this meaning, section 101.101(a) gives governmental units a right to notice on which they can insist, but it does not specify the consequences if that right is denied. Can a governmental unit waive its right to notice, or is notice essential to a waiver of immunity? Before recodification of the Tort Claims Act in 1985,[35] which was intended to be "without substantive change",[36] the six-month notice provision required that "any person making a claim hereunder shall give notice",[37] thereby indicating that the claimant had a duty to give notice.[38] But like the recodified version, the former statute did not state the consequences for breach of the duty to notify. By contrast, according to the conventions of the Code Construction Act, " '[m]ust' creates or recognizes a condition precedent",[39] at least suggesting that a requirement could be jurisdictional. The use of "is entitled to" rather than "must"—which was surely an intentional choice by the codifiers in deciding to abandon "shall"—is therefore some indication that the Legislature did not intend notice

31. *Dubai*, 12 S.W.3d at 76 (citing Restatement (Second) of Judgments § 12, cmt. b, at 118 (1982)) (alterations in the original).

32. *Id.*

33. Tex. Civ. Prac. & Rem.Code § 101.101(a) (emphasis added).

34. Tex. Gov't Code § 311.016(4).

35. Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3305.

36. Tex. Civ. Prac. & Rem.Code § 1.001(a).

37. Act of May 14, 1969, 61st Leg., R.S., ch. 292, § 16, 1969 Tex. Gen. Laws 874, 878 ("Except where there is actual notice on the part of the governmental unit that death has

occurred or that the claimant has received some injury, any person making a claim hereunder shall give notice of the same to the governmental unit against which such claim is made, reasonably describing the injury claimed and the time, manner and place of the incident from which it arose, within six months from the date of the incident. Provided, however, except where there is such actual notice, charter and ordinance provisions of cities requiring notice within a charter period permitted by law are hereby expressly ratified and approved.") (formerly Tex.Rev.Civ. Stat. Ann. art. 6252–19, § 16).

38. *Cf.* Tex. Gov't Code § 311.016(2) (stating that with respect to codified statutes, " '[s]hall' imposes a duty").

39. *Id.* § 311.016(3).

to be either a condition precedent to waiver of immunity or jurisdictional.

One indicator of legislative intent is a statute's purpose.[40] As noted above, the purpose of the notice requirement in section 101.101 is "to ensure prompt reporting of claims in order to enable governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial."[41] We do not see how this purpose is served by allowing lack of notice to be raised at any time, for the first time on appeal, or even later, long after the litigation has ended. On the contrary, it appears that if a governmental unit is to avoid litigation to which it should not be subjected because of lack of notice, it should raise the issue as soon as possible. Moreover, if in a particular case a governmental unit were not prejudiced by lack of notice and chose to waive it, we do not see how the statutory purpose would thereby be impaired.

But the Medical Center argues that it is the right to take an interlocutory appeal from a trial court's refusal to dismiss the case, not the right to raise lack of notice at any time, that avoids the burden of litigation when immunity from suit has not been waived. In creating the right of a governmental unit to appeal from the denial of a plea to the jurisdiction, the Legislature clearly assumed that at least some requirements of the Tort Claims Act's waiver of immunity are jurisdictional, but we find nothing to indicate that the six-month notice requirement was one of them. Certainly, not all requirements are jurisdictional. For instance, section 101.102(a), adjacent section 101.101, mandates that "[a] suit under this chapter shall be brought in state court in the county in which the cause of action or a part of the cause of action arises."[42] We have previously held in *Brown v. Owens* that filing suit in the wrong county does not deprive the court of subject matter jurisdiction.[43] The Medical Center does not challenge our holding in *Brown* but attempts to distinguish it by arguing that if the failure of a statutory requirement can be cured—in *Brown*, by transfer of venue—the requirement should not be jurisdictional. Only if the failure of a statutory requirement cannot be cured—giving notice within six months after the six months has passed—should the requirement be jurisdictional. While the distinction the Medical Center draws is a salient one, we think it is better applied with the purpose of the requirement in mind. Although timely notice cannot be given after the stated time for it has passed, prejudice from lack of notice may be cured or may never arise at all. While the government need not show prejudice to obtain dismissal for want of notice, if it chooses to try a case to judgment without complaining of a lack of notice, it suffers no impairment of right that would entitle it to complain of no notice for the first time on appeal. In this regard, lack of notice should no more be jurisdictional than improper venue. Thus, even using the curable/incurable distinction, we cannot tell that the Legislature intended a

**40.** *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 494 (Tex.2001) ("When a statute is silent about the consequences of noncompliance, we look to the statute's purpose to determine the proper consequences.") (citing *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex.1999); *Schepps v. Presbyterian Hosp. of Dallas*, 652 S.W.2d 934, 938 (Tex.1983); and *Chisholm v. Bewley Mills*, 155 Tex. 400, 287 S.W.2d 943, 945 (1956)); *Hines v. Hash*, 843 S.W.2d 464, 468 (Tex.1992).

**41.** *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam) (citing *City of Houston v. Torres*, 621 S.W.2d 588, 591 (Tex.1981)).

**42.** Tex. Civ. Prac. & Rem.Code § 101.102(a).

**43.** 674 S.W.2d 748, 751 (Tex.1984).

ruling on notice to be subject to interlocutory appeal when a ruling on venue is not.

The Medical Center argues that notice should be jurisdictional, even though venue is not, because notice implicates substantive rights and venue does not. We are not convinced of the premise. The Legislature itself included both the notice and venue provisions in a subchapter entitled "Procedures", along with provisions relating to the legal representation of governmental units, evidence of insurance coverage, settlements, payment and collection of judgments, and other seemingly non-substantive matters.[44] Although the Code Construction Act cautions that "[t]he heading of a ... subchapter ... does not limit or expand the meaning of a statute",[45] the heading gives some indication of the Legislature's intent to group what it considered to be procedural matters together.

■ The Medical Center argues that we have construed provisions similar to the notice requirement in section 101.101(a) to be jurisdictional. But the three cases cited by the Medical Center all involve the failure to exhaust administrative remedies.[46] In *Essenburg v. Dallas County,* we said that a "failure to exhaust administrative remedies may deprive courts of subject matter jurisdiction in the dispute ... because the Legislature in conferring jurisdiction upon an agency expresses its will to have the agency resolve disputed issues of fact and policy."[47] Indeed, an "exhaustion requirement seeks to assure that the appropriate body adjudicates the dispute—the hallmark of a jurisdictional statute."[48] By contrast, we held that a statute providing that " 'a person may not sue on a claim against a county unless the person has presented the claim to the commissioners' court and the commissioners' court has neglected or refused to pay all or part of the claim' " was not jurisdictional.[49] This presentment requirement, we said, was to promote settlement, not to define subject matter jurisdiction.[50] A requirement of presentment merely gives a governmental unit an opportunity to decide for itself whether to pay a claim. A requirement of exhaustion of remedies ensures a decision

44. Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3305–3306.

45. Tex. Gov't Code § 311.024.

46. *Wilmer–Hutchins Indep. Sch. Dist. v. Sullivan,* 51 S.W.3d 293, 293–295 (Tex.2001) (per curiam) (dismissing a claim against a school district for want of jurisdiction because of the plaintiff's failure to exhaust administrative remedies); *General Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 595–598 (Tex.2001) (holding that exhaustion of administrative procedures under chapter 2260 of the Government Code is a prerequisite to suit under chapter 107 of the Civil Practice and Remedies Code); *Texas Dep't of Transp. v. Aer–Aerotron, Inc.,* 39 S.W.3d 220, 220–221 (Tex.2001) (same).

47. 988 S.W.2d 188, 189 (Tex.1998) (per curiam).

48. *Id.*

49. *Id.* at 188 (construing former Tex. Loc. Gov't Code § 81.041(a), now § 89.004); *cf.* 28 U.S.C. § 2675(a) (Federal Tort Claims Act) ("An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."); *e.g., Wardsworth v. United States,* 721 F.2d 503, 505 (5th Cir.1983) (per curiam) ("a lawsuit may be brought under the FTCA only after presenting the claim to the appropriate federal agency and receiving a denial of the claim").

50. 988 S.W.2d at 189.

on the merits by the authority designated to make it.

The court of appeals cited *Essenburg* in support of its conclusion that the notice requirement in section 101.101(a) is not jurisdictional. The Medical Center argues that *Essenburg* is irrelevant because the statute there was not an integral part of a statute waiving immunity as section 101.101(a) is, and because a presentment requirement is curable by abatement. Neither argument is persuasive. Section 101.101(a) is certainly integral to the Tort Claims Act, but so is section 101.102(a), the venue requirement, yet it is not jurisdictional. And though a failure to present a claim before suit is filed is curable while a failure to give notice of a claim within six months is not, we do not think, for the reasons we have explained, that the distinction can be used to determine whether the notice provision is jurisdictional.

Finally, the Medical Center argues that to hold that the six-month notice provision is not jurisdictional improperly expands the Tort Claims Act's waiver of immunity. The Medical Center argues that there should be a presumption of non-waiver like that reflected in the Code Construction Act, which states that "a statute shall not

be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."[51] Since this Court decided *Hosner v. DeYoung* in 1847, the Medical Center continues, the Court has held that the State "can[not] be sued in her own courts without her consent, and then only in the manner indicated by that consent."[52] The notice requirement in section 101.101(a), the Medical Center insists, is part of the manner in which the Tort Claims Act waives immunity. While we certainly do not disagree with the general principles the Medical Center asserts or recede from so venerable an authority as *Hosner*, we do not find them dispositive of whether the Legislature intended notice to be a condition of its waiver of immunity, for all of the reasons we have explained.

▮▮▮ Thus, we conclude that the failure to give notice of a claim as required by section 101.101 does not deprive a court of subject matter jurisdiction over an action on the claim. We note that in other jurisdictions when notice or limitations provisions pertaining to suits against the government are considered jurisdictional, the statutory language is much clearer than section 101.101.[53] We disapprove the

51. Tex. Gov't Code § 311.034.

52. 1 Tex. 764, 769 (1847); *accord, e.g., State v. Isbell*, 127 Tex. 399, 94 S.W.2d 423, 424 (1936); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 (Tex.2003).

53. **Notice jurisdictional: Colorado**—Colo. Rev. Stat. § 24–10–109(1) ("Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action."); *Brock v. Nyland*, 955 P.2d 1037, 1043 (Colo.1998) (holding that untimely notice creates a jurisdictional bar to suit against the state), *overruled in part on other grounds by Finnie v. Jefferson County Sch. Dist. R–1*, 79 P.3d 1253, 1255–1256 (Colo.2003) (applying "substantial compliance" standard to no-

tice provision); **Georgia**—Ga. Code § 50–21–26(a)(3) ("No action against the state ... shall be commenced and the courts shall have no jurisdiction thereof unless and until a written notice of claim has been timely presented to the state as provided in this subsection ...."); *Sylvester v. Dep't of Transp.*, 252 Ga.App. 31, 555 S.E.2d 740, 741 (2001) (holding that the failure to provide timely notice deprived the court of subject matter jurisdiction in suit against the state); **Illinois**—705 Ill. Comp. Stat. 505/22–2 (stating if timely notice is not given, "any such action commenced against [enumerated state agencies] shall be dismissed and the person to whom any such cause of action accrued for any personal injury shall be forever barred from further action in the Court of Claims"); *Currie v. Lao*, 148 Ill.2d 151, 170 Ill.Dec. 297, 592 N.E.2d 977,

979 (1992) (stating that if suit against state employee was actually suit against the state, the exclusive jurisdiction of the Court of Claims could be raised for the first time on appeal); **Montana**—Mont. Code § 2–9–301(1), (2) ("All claims against the state ... must be presented in writing to the department of administration .... A complaint based on a claim ... may not be filed in district court unless the claimant has first presented the claim to the department of administration and the department has finally denied the claim."); *Stenstrom v. State,* 280 Mont. 321, 930 P.2d 650, 655 (1996) ("Where a petitioner has failed to first file with the Department of Administration, the district court lacks jurisdiction to review the matter."); *see Buettner v. Dep't of Labor & Indus.,* 240 Mont. 389, 784 P.2d 906, 907 (1989) (stating that the notice requirement is "a procedural statute which limits direct access to the courts ... while the Department of Administration evaluates the claim"); **New Jersey**—N.J.Rev.Stat. § 59:8–8 (stating that a claimant who fails to timely file notice of his claim with a public entity "shall be forever barred from recovering against a public entity or public employee"); *Brook v. April,* 294 N.J.Super. 90, 682 A.2d 744, 745 (Ct.App.Div. 1996) (characterizing timely notice as a "jurisdictional prerequisite"); *Priore v. State,* 190 N.J.Super. 127, 462 A.2d 191, 192B193 (Ct. App.Div.1983) (holding that the failure to file timely notice was a nullity and did not confer jurisdiction on the court); **New Mexico**—N.M. Stat § 41–4–16(B) ("No suit or action for which immunity has been waived under the Tort Claims Act shall be maintained and no court shall have jurisdiction to consider any suit or action against the state or any local public body unless notice has been given as required by this section, or unless the governmental entity had actual notice of the occurrence."); *Emery v. Univ. of N.M. Med. Ctr.,* 96 N.M. 144, 628 P.2d 1140, 1143 (1981) (stating that improper notice is a jurisdictional bar to suit against the state); **North Dakota**—N.D. Cent.Code § 32–12.2–04 (stating that claimants "shall present" timely notice to the director of the office of management and budget); *Cooke v. Univ. of N.D.,* 603 N.W.2d 504, 506B507 (N.D.1999) (holding that claimant's failure to provide proper notice deprived court of subject matter jurisdiction over claim against the state); **Virginia**—Va. Code § 8.01–195.6 (stating that "[e]very claim cognizable against the Commonwealth ... shall be forever barred unless" the claimant provides written notice of the claim); *see Halberstam v. Commonwealth,* 251 Va. 248, 467 S.E.2d 783, 785 (1996) (holding that strict compliance with statutes waiving sovereign immunity was required and that estoppel did not lie against the sovereign).

**Notice not jurisdictional: Arizona**—Ariz. Rev. Stat. § 12–821.01(A) (stating that claimants "shall file" timely notice or it "is barred and no action may be maintained thereon"); *Pritchard v. State,* 163 Ariz. 427, 788 P.2d 1178, 1183 (1990) (holding that claimant's failure to comply with statutory notice requirements was not a jurisdictional defect which could be raised for the first time on appeal); **California**—Cal. Gov't Code § 911.2 (stating that claims "shall be presented" timely); *see Phillips v. Desert Hosp. Dist.,* 49 Cal.3d 699, 263 Cal.Rptr. 119, 780 P.2d 349, 353 (1989) (holding that the state waived defenses based on improper notice by failing to notify the claimant of the deficiencies); **Florida**—Fla. Stat. § 768.28(6)(a) (stating that "[a]n action may not be instituted on a claim against the state ... unless the claimant presents the claim in writing" within the time provided); *VonDrasek v. City of St. Petersburg,* 777 So.2d 989, 991 (Fla.Ct.App.2000) ("It is well established that the notice requirement in section 768.28(6) does not affect the jurisdiction of the court, but rather is a condition precedent to the lawsuit."); **Indiana**—Ind. Code § 34–13–3–6 (stating that "a claim against the state is barred unless notice is filed" timely); *Ricketts v. State,* 720 N.E.2d 1244, 1246 (Ind.Ct.App.1999) (holding that substantial compliance with notice provisions was sufficient where its purpose was met); *Lawrence County Comm'rs v. Chorely,* 398 N.E.2d 694 (Ind.Ct.App.1979) (finding that state had waived notice in decision under former version of act); **Michigan**—Mich. Comp. Laws § 600.6431 ("No claim may be maintained against the state unless the claimant [timely] files ... notice of an intention to file a claim against the state ...."); *May v. Dep't of Nat. Res.,* 140 Mich.App. 730, 365 N.W.2d 192, 193 (1985) (per curiam) (stating that because a delay in providing notice can never be long enough to constitute actual prejudice as a matter of law, the state's claim of prejudice must be supported with evidence to warrant dismissal); *Arnold v. Dep't of Transp.,* 235 Mich.App. 341, 597 N.W.2d 261, 263B264 (1999) (holding that verification requirement of notice provision was not jurisdictional); **Minnesota**—Minn. Stat. § 3.736(5) (stating that "every person ... who claims compensation from the state ... shall present

notice" in a timely manner); *Naylor v. Minn. Daily*, 342 N.W.2d 632, 634B635 (Minn.1984) (holding that the failure to provide notice in suit against the state was not a jurisdictional defect); **New Hampshire**—N.H.Rev.Stat. § 541–B:14(IV) (stating that filing notice is "a condition precedent to commencement of the action" but the lack of notice does not bar a claim unless the state can show prejudice); *Opinion of Justices*, 126 N.H. 554, 493 A.2d 1182, 1191 (1985) (advisory op.) ("[T]he loss of rights of action for failure to satisfy the notice requirement is ... grossly disproportionate .... We therefore uphold the provision to the extent that noncompliance does not result in forfeiture of any rights of action against the State. Viewed in this light, the [notice] provision's language is directory, not mandatory or jurisdictional."); **New York**—N.Y. Court of Claims Act §§ 10 (requiring notice of claims), 11(c) (stating that the state's objection based on improper notice "is waived, unless raised, with particularity" prior to or with the first responsive pleading); *see Chapman v. State*, 261 A.D.2d 814, 690 N.Y.S.2d 328, 329B330 (1999) (noting effect of section 11 was not retroactive); **South Dakota**—S.D. Codified Laws § 3–21–2 ("No action for the recovery of damages ... caused by a public entity ... may be maintained ... unless written notice" is given timely); *Smith v. Neville*, 539 N.W.2d 679, 681 (S.D.1995) (holding that state was estopped from claiming deficient notice); **Wisconsin**—Wis. Stat. § 893.80(1) (stating that "no action may be brought or maintained against [the state] ... upon a claim or cause of action unless" timely notice is given; *Gillen v. City of Neenah*, 219 Wis.2d 806, 580 N.W.2d 628, 634 (1998) (holding that the failure to give notice of a claim against the state was not a jurisdictional defect that could be raised for the first time on appeal) (citing *Figgs v. City of Milwaukee*, 121 Wis.2d 44, 357 N.W.2d 548, 552 n. 6 (1984)).

**Limitations period jurisdictional: Connecticut**—Conn. Gen.Stat. § 4–147 (stating that "[a]ny person wishing to present a claim against the state shall file with the clerk of the Office of the Claims Commissioner a notice of claim"); *Prigge v. Ragaglia*, 265 Conn. 338, 828 A.2d 542, 549 (2003) (holding that the failure to comply with the claims procedure deprives the court of subject matter jurisdiction); **Iowa**—Iowa Code § 669.13 (stating that "[e]very claim and suit permitted under this chapter shall be forever barred, unless" the claimant provides timely written notice to the state appeal board); *Drahaus v. State*, 584 N.W.2d 270, 273 (Iowa 1998) (holding that the failure to exhaust administrative remedies is jurisdictional and the failure to timely file a claim divests the court of subject matter jurisdiction); *see also Graves v. Iowa Lakes Cmty. Coll.*, 639 N.W.2d 22, 26 n. 1 (Iowa 2002) (stating that the failure to exhaust administrative remedies was not subject to waiver or estoppel and could be raised for the first time on appeal); **Ohio**—Ohio Rev.Code § 2743.16(A) (stating that "civil actions against the state permitted by [state tort claims act] shall be commenced" within the limitations period); *Smith v. Stempel*, 65 Ohio App.2d 36, 414 N.E.2d 445 (1979) (untimely filing does not activate state's limited waiver of sovereign immunity); **Wyoming**—Wyo. Stat. § 1–39–113(a) (stating that "[n]o action shall be brought under this act against a governmental entity unless" the claimant provides notice); *Peterson v. Sweetwater County Sch. Dist.*, 929 P.2d 525, 529 (Wyo.1983) (holding that failure to provide timely notice deprived court of subject matter jurisdiction).

**Limitations period not jurisdictional: Alaska**—Alaska Stat. § 44.77.010 (requiring administrative presentment of contract claims against the state); *State v. Zia, Inc.*, 556 P.2d 1257, 1263 (Alaska 1976) (holding that administrative presentment of contract claim against the state was a condition precedent to suit, but the failure to exhaust administrative remedies did not deprive court of subject matter jurisdiction); *see also* Alaska Stat. § 09.50.250 (allowing tort claimants to bring an action against the state); **Massachusetts**—Mass Gen. Laws ch. 258 § 4 ("A civil action shall not be instituted against [the state] unless the claimant shall have first presented his claim in writing ....."); *McGrath v. Stanley*, 397 Mass. 775, 493 N.E.2d 832, 836 (1986) (holding that proper notice is not a jurisdictional limitation, but a condition precedent affecting the right to recovery, not the existence of liability); *Moran v. Town of Mashpee*, 17 Mass.App.Ct. 679, 461 N.E.2d 1231, 1233 (1984) (holding that improper notice is not a jurisdictional defect and can be waived); **Nebraska**—Neb. Rev. Stat. §§ 81–8,212 (requiring tort claims against the state to be filed with the Risk Manager in a manner prescribed by the State Claims Board), 81–8,213 (stating that "[n]o suit shall be permitted under the State Tort Claims Act" until there is a final disposition by the board, or six months have passed); *Cole v. Isherwood*, 264 Neb. 985, 653 N.W.2d 821, 825B826 (2002) (holding that the failure to comply with the claim

decisions of the courts of appeals to the contrary.[54] The notice provision is not a condition of the Tort Claims Act's waiver of immunity as other provisions are. We emphasize that the requirement of notice is no less mandatory, and that a lack of notice bars any action under the Act. But it does not deprive the court of subject matter jurisdiction.

## IV

■ The Medical Center argues that it did not waive its contention that the lack of notice required by section 101.101(a) barred Loutzenhiser's claim by raising it seven weeks before trial. We agree. For one thing, the Medical Center raised the issue by motion for summary judgment much earlier in the litigation, and it was entitled to seek reconsideration based on subsequent authority. Even if its motive was purely to exercise its newly-created right to take an interlocutory appeal from an adverse ruling on the issues raised by its plea to the jurisdiction, thereby delaying the trial, there was nothing to prevent it from doing so. The trial court was understandably irked that resolution of a case already delayed by one interlocutory appeal would be further delayed by another, but any fault was the Legislature's, not the Medical Center's. The Medical Center had a valid argument that it had not received the notice required by section 101.101(a), as we have now held, and it was entitled to raise it. Treating the Medical Center's plea as a motion to reconsider the motion for summary judgment, the trial court should have granted summary judgment.

\* \* \* \* \*

■ As we have said, the trial court's order contained three rulings: it refused to dismiss the action based on the Medical Center's arguments of no notice and no alleged use of property, and alternatively struck the plea as untimely. The court of appeals simply "affirm[ed] the trial court's judgment." [55] It should have affirmed only that portion of the order refusing to dismiss the case based on the Medical Cen-

presentment requirements of the state tort claims act does not deprive the court of subject matter jurisdiction); **North Carolina**—N.C. Gen.Stat. § 143–299 (stating that "[a]ll claims against any and all State departments, institutions, and agencies shall henceforth be forever barred unless" they are timely filed with the state Industrial Commission); *see Jones v. Pitt County Mem'l Hosp., Inc.*, 104 N.C.App. 613, 410 S.E.2d 513, 515 (1991) (holding that although trial court lacked jurisdiction over claim which should have been filed with state Industrial Commission, the state's argument that the trial court's dismissal without prejudice impermissibly extended limitations was not preserved for appeal); **South Carolina**—S.C.Code § 15–78–110 (requiring claimant to timely sue or file verified claim or it "is forever barred"); *Joubert v. S.C. Dep't of Social Servs.*, 341 S.C. 176, 534 S.E.2d 1, 8 (2000) (stating that strict compliance with the verified claim requirements was mandatory and had the effect of extending limitations in a suit against the state); **West**

**Virginia**—W. Va.Code § 29–12A–6 (stating that actions against political subdivisions "shall be brought within two years"); *see Stamper v. Kanawha County Bd. of Educ.*, 191 W.Va. 297, 445 S.E.2d 238, 240 (1994) (characterizing section 29–12A–6 as "a procedural statute dealing primarily with statutes of limitations. It does not contain substantive limitations.").

54. These include *National Sports & Spirit, Inc. v. Univ. of N. Tex.*, 117 S.W.3d 76 (Tex. App.-Fort Worth 2003, no pet.); *Crane County v. Saults*, 101 S.W.3d 764 (Tex.App.-El Paso 2003, no pet.); *Texas Dep't of Transp. v. Blevins*, 101 S.W.3d 170 (Tex.App.-Fort Worth 2003), *appeal dismissed per curiam*, 140 S.W.3d 337, 2004 WL 1533055 (Tex.2004); *Texana Cmty. MHMR Ctr. v. Silvas*, 62 S.W.3d 317 (Tex.App.-Corpus Christi 2001, no pet.); *State v. Kreider*, 44 S.W.3d 258 (Tex.App.-Fort Worth 2001, pet. denied).

55. 140 S.W.3d at 355.

ter's argument of no alleged use of property.[56] It did not reach, and therefore could not affirm, the trial court's alternative ruling striking the plea. And having correctly concluded that the Medical Center's notice argument was not jurisdictional, the court of appeals did not have interlocutory appellate jurisdiction to affirm that portion of the trial court's order.[57] Accordingly, we modify the judgment of the court of appeals to affirm only that portion of the trial court's order refusing to dismiss the case because of inadequate allegations of use of property. As modified, the judgment is affirmed.

Justice O'NEILL filed a concurring opinion, joined by Justice SCHNEIDER and Justice SMITH.

Justice O'NEILL, concurring, joined by Justice SCHNEIDER and Justice SMITH.

The only issue properly before us is whether a plaintiff's failure to comply with the notice requirement of section 101.101 of the Tort Claims Act deprives a trial court of subject-matter jurisdiction. I agree with the Court that it does not. But having determined that notice is not jurisdictional—meaning the trial court's ruling on whether the notice requirement has been met is not reviewable on interlocutory appeal—the Court proceeds to decide the very substantive issues that it concludes the court of appeals can't reach. Because the Court's opinion goes beyond the discrete jurisdictional issue presented, I concur in the Court's judgment.

The Court holds that Stephen Loutzenhiser was required to give notice of a claim within six months of his birth and failed to

do so. 140 S.W.3d at 354. But whether a governmental entity had actual notice is often, if not always, a factual inquiry. *See Tex. Dep't of Crim. Justice v. Simons*, 140 S.W.3d 338, 343, 2004 WL 1533264 (Tex. 2004).[1] That determination should be made first by the trial court on a record informed by our decision in *Simons* and not in the context of an impermissible interlocutory appeal.

The consequence of the Court's holding that the notice requirement is not jurisdictional is that the substantive issues the trial court decides are not immediately reviewable. As the United States Supreme Court has recognized, there are good reasons that interlocutory appeals

> are the exception, not the rule.... An interlocutory appeal can make it more difficult for trial judges to do their basic job—supervising trial proceedings. It can threaten those proceedings with delay, adding costs and diminishing coherence. It also risks additional, and unnecessary, appellate court work either when it presents appellate courts with less developed records or when it brings them appeals that, had the trial simply proceeded, would have turned out to be unnecessary.

*Tyson Johnson v. Houston Jones*, 515 U.S. 304, 309, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).

I agree with the Court that "having correctly concluded that the Medical Center's notice arguments are not jurisdictional, the court of appeals did not have interlocutory appellate jurisdiction to affirm th[e] portion of the trial court's order" striking the Center's plea to the jurisdiction. 140 S.W.3d at 366. But the Court

---

**56.** *See Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637–639 (Tex.1999) (per curiam).

**57.** *See Texas Dep't of Crim. Justice v. Simons*, 140 S.W.3d 338, 343 (Tex.2004).

**1.** I join the Court's opinion in *Simons* defining "actual notice" because the issue is, in my view, sufficiently related to the central jurisdictional question for decision.

itself exceeds the parameters of our own jurisdiction by proceeding to decide the substantive issues. While I largely agree with the Court's analysis of those issues, I cannot join the Court's opinion to the extent it ventures beyond deciding the jurisdictional question presented.

