Opinion issued August 31, 2018



In The

# Court of Appeals

For The

# First District of Texas

————————————

NO. 01-17-00493-CV

————————————

**JEFFERSON COUNTY, TEXAS, Appellant**

**V.**

**ELLARENE FARRIS, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE HEIRS AND ESTATE OF JAMES FARRIS, Appellee**

On Appeal from the 11th District Court
Harris County, Texas
Trial Court Case No. 2005-09580

## DISSENTING OPINION

[Judge James] Farris, who was 72 when he died, spent almost his entire legal career[, until retiring in 1996,] in the Jefferson County courthouse[, which included a period of asbestos remediation at the courthouse, during which he was allegedly exposed to the deadly fibers] . . . .

. . . .

"He had just given a speech in Idaho in October 2004," Ellarene Farris said. "He came home and said he couldn't do it anymore. *He went into the hospital and nine days later, he was dead*."

She said her husband had no idea he suffered from mesothelioma, a cancer of the lining of the lungs. The symptoms began as an abdominal pain that wouldn't quit and ended soon after with a struggle to breathe.[1]

Because the majority errs in misconstruing Texas Supreme Court precedent and dismissing the wrongful death and survival action of appellee, Ellarene Farris, against appellant, Jefferson County, Texas, for failure, pursuant to the Texas Tort Claims Act, to provide "timely" notice in 1997 of a *non-existent claim*, I respectfully dissent.

The Texas Tort Claims Act waives governmental immunity to suit in certain specified circumstances. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021–.29 (Vernon 2011). And the statute provides:

A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the *incident giving rise to the claim* occurred. The notice must reasonably describe:

(1) *the damage or injury claimed*;

---

[1] Dan Wallach, *Death Suit Blaming Asbestos in Jefferson County Courthouse Could End*, BEAUMONT ENTERPRISE, Sept. 12, 2016, https://www.beaumontenterprise.com/news/article/Death-suit-blaming-asbestos-in-Jefferson-County-9217178.php (emphasis added) (Exhibit 3 to Jefferson County's Amended Plea to the Jurisdiction and Amended Motion for Summary Judgment and Amended No Evidence Motion for Summary Judgment).

(2) the time and place of the incident; and

(3) the incident.

*Id.* § 101.101(a) (Vernon 2011) (emphasis added). Clearly, the statute "does not require notice of a nonexistent claim." *Hous. Auth. of Beaumont v. Landrio*, 269 S.W.3d 735, 745 (Tex. App.—Beaumont 2008, pet. denied) (citing *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Loutzenhiser*, 140 S.W.3d 351, 356 (Tex. 2004), *superseded by statute on other grounds*, Act of May 25, 2005, 79th Leg., R.S., ch. 1150, § 1, 2005 Tex. Gen. Laws 3783 (codified at TEX. GOV'T CODE ANN. § 311.034)).

Judge Farris died of mesothelioma on November 5, 2004, a mere nine days after exhibiting his first symptoms of illness and nearly eight years after his last exposure to asbestos in the Jefferson County courthouse and annex in December 1996. His widow, Ellarene, provided, pursuant to the Texas Tort Claims Act, Jefferson County with written notice of her claims against it on April 4, 2005, less than six months after the emergence of Judge Farris's first symptoms and, ultimately terminal, diagnosis. Stunningly, the majority holds that the claims asserted by Ellarene are barred by governmental immunity because she did not provide notice of them to Jefferson County within six months of Judge Farris's final exposure to asbestos in December 1996—before the existence of any injury or damage. *See* TEX. CIV. PRAC. & REM. CODE § 101.101(a).

Based on the majority's reasoning, Judge Farris was required to provide Jefferson County with *notice* of a *premature and speculative claim* within six months of December 1996. *See Childs v. Haussecker*, 974 S.W.2d 31, 43 (Tex. 1998) ("Requiring plaintiffs to file suit based only upon their suspicions about causal connections is . . . undesirable in latent occupational disease cases because, among other things, plaintiffs would be compelled to file premature, speculative claims."). But at that time, Judge Farris did not yet have a *claim* against Jefferson County for which he could provide *notice* because it was nearly eight years before he exhibited any symptom or was diagnosed with mesothelioma, i.e., before any damage or injury to him had come into existence. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a). Instead, his *claim* relating to a malignant asbestos-related condition arising from his employment with Jefferson County did not accrue until his diagnosis or the manifestation of symptoms that put him on notice of his condition. *See Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 653 (Tex. 2000); *see also Childs*, 974 S.W.2d at 33 (accrual of damages in latent-disease cases not until "plaintiff's symptoms manifest themselves to a degree or for a duration that would put a reasonable person on notice").

Here, as previously explained by the Texas Supreme Court, Judge Farris's exposure to asbestos in the Jefferson County courthouse and annex "was only *an* incident—one of two—giving rise to [any] claim" he might have against Jefferson

4

County.  *Loutzenhiser*, 140 S.W.3d at 356 (emphasis in original).  In *Loutzenhiser*, a mother, individually and on behalf of her child, brought suit against the University of Texas Southwestern Medical Center at Dallas, alleging that a chorionic villus sampling ("CVS"), a prenatal diagnostic test, performed by the Medical Center caused her child to be born with birth defects.  *Id.* at 354.  The court held that section 101.101(a)'s six-month-notice period ran from the birth of the child, not the date that the Medical Center performed the CVS.  *Id.* at 356.  The court explained:

> The Medical Center argues that "the incident giving rise to the claim" was the CVS, but the CVS was only *an* incident—one of two—giving rise to the claim.  The other such incident, and one equally necessary to the existence of the claim, was [the child's] live birth.  If the notice period ran from the CVS, the statute required notice of a nonexistent claim.  "Courts should not read a statute to create such an absurd result."  We decline to do so here when there is a reasonable alternative construction of the statutory language.  Because [the child's] live birth was an incident giving rise to his claim, and one essential to the existence of the claim, we hold that the six-month period for giving notice began when [the child] was born.[2]

*Id.* at 356–57 (quoting *Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex. 1996)).

---

2    The baby, until born, legally had no claim because of "the longstanding common law rule . . . that the rights of a fetus [are] contingent on live birth."  *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Loutzenhiser*, 140 S.W.3d 351, 356 (Tex. 2004) (second alteration in original) (internal quotations omitted).

As in *Loutzenhiser*, if the notice period in this case runs from Judge Farris's last exposure to asbestos, it would require "notice of a nonexistent claim." *See id.* at 356. Thus, section 101.101(a)'s notice period must run from the date that Judge Farris's injuries and damages arose, nine days before his death.

In reaching the opposite conclusion, the majority misconstrues well-established Texas Supreme Court precedent, including *Loutzenhiser*. Because Judge Farris had not suffered any damage or injury, and did not even arguably have a *claim* against Jefferson County, until nine days before his death, I would hold that Ellarene's notice, provided within six months of Judge Farris's first symptoms and, ultimately terminal, mesothelioma diagnosis, was timely.

The majority's conclusion to the contrary should be corrected by our high court. *See* TEX. GOV'T CODE ANN. § 22.001(a) (Vernon Supp. 2017) ("The supreme court has appellate jurisdiction . . . if the court determines that the appeal presents a question of law that is important to the jurisprudence of the state.").

Terry Jennings
Justice

Panel consists of Justices Jennings, Massengale, and Caughey.

Jennings, J., dissenting

6