Opinion issued May 13, 2010.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00101-CV

———————————

James A. Monroe, Appellant

V.

Unifund CCR Partners, Appellee



 



 

On Appeal from the County Court at Law Number Three

Harris County, Texas



Trial Court Case No. 916119

 



 

MEMORANDUM OPINION

          Appellant,
James Monroe, brings this appeal to complain of the trial court’s judgment in
favor of appellee, Unifund CCR Partners (“Unifund”).  In four points of error, Monroe contends that
there is insufficient evidence to support (1) the trial court’s exercise of jurisdiction
over this case; (2) the trial court’s findings that his credit card account was
assigned to Unifund; (3) the trial court’s findings that he purchased goods and
services with the account, promised to pay for said account, and failed to pay
for the account and thereby breached his account agreement; and (4) the trial
court’s finding that Unifund was entitled to recover $25,406.76, plus
interest.  We affirm.

BACKGROUND

          Citibank
South Dakota (“Citibank”) issued a credit card to Monroe.  Monroe received and used that credit card,
incurring charges on the account.  After
Monroe failed to pay all of the amounts due on the account, Citibank assigned
the account to Unifund.  In March 2008,
Unifund filed suit against Monroe to recover the amount owed—$25,405.76.  

Unifund allegedly was the assignee
of Citibank and sued Monroe for breach of contract, money had and received,
account stated and quantum meruit. 
Unifund also sought interest, costs, and its attorney’s fees.  Attached to the petition was an affidavit by
Kim Kenney, who stated that she was an authorized representative of Unifund and
that Monroe owed Unifund $25,405.76 on an account that Unifund acquired from
Citibank.  Both Kenney’s affidavit and
the petition contained a 16-digit account number.  Also attached to the petition was a Unifund
Statement informing Monroe that $25,405.76 was due on the account “issued under
the name of Citibank South DakotaNA [sic] and acquired from Citibank.”  The Unifund Statement listed the same
16-digit account number given in the petition and Kenney’s affidavit.

Monroe answered with a general
denial, and also stated that “[t]he Defendant never entered into a contract
with the Plaintiff and there is no proof that Plaintiff is entitled to recover
in the capacity in which it sues; therefore, Plaintiff has no standing to bring
this suit.”  Monroe attached a verification
to this answer. 

Unifund moved for summary judgment,
filing a cursory motion for summary judgment incorporating all of its previous
pleadings and their accompanying exhibits. 
As Exhibit A to its motion for summary judgment, Unifund attached the
affidavit of Joseph Lutz, stating (1) Lutz was the designated agent of Unifund;
(2) he had personal knowledge of the “books and records of [Unifund] concerning
this claim against [Monroe];” (3) Monroe entered into an agreement that allowed
him “to receive cash advances and/or purchase goods and services;” (4) Monroe
owed $25,405.76; and (5) documents attached to the affidavit were Unifund’s
business records.  Kenney’s affidavit and
the Unifund statement, which had been attached to Unifund’s petition, were also
attached to Lutz’s affdiavit. 

Portions of a “Bill of Sale,
Assignment and Assumption Agreement” also followed Lutz’s affidavit.  This agreement was executed by Citibank and
“Unifund Portfolio A, LLC.”  The Agreement
stated that it conveyed “good and marketable title to the Accounts described in
Section 1.2 of the Agreement,” to Unifund Portfolio A, LLC and its “successors
and assigns.”  However, Section 1.2 of
the Agreement was not included in the pages following Lutz’s affidavit.  An “AT&T Universal Card Cardmember
Agreement” and monthly statements from August 2003 through August 2004 for an
AT&T Universal Card issued to Monroe were, however, attached to Lutz’s
affidavit.  

In his response to Unifund’s motion
for summary judgment, Monroe objected to each of Unifund’s exhibits and argued
that summary judgment in Unifund’s favor was improper.  First, Monroe contended that Unifund’s claim
was essentially a suit on a sworn account—a cause of action that Unifund had
not pleaded and one that does not allow the holder of a credit card debt to sue
for payment.  Monroe further contended
that summary judgment was not proper on Unifund’s breach of contract claim
because Unifund had not proved the existence of a contract or its terms and
conditions.  Monroe contended that the
actual credit card agreement between himself and Citibank was not in
evidence.  Finally, Monroe argued that
Unifund was not entitled to summary judgment in its favor because Unifund had
failed to establish that it had standing to sue as an assignee of Citibank.

The trial court denied Unifund’s
motion for summary judgment and sustained several of Monroe’s objections to the
evidence Unifund introduced in support of its motion.

Shortly after the trial court
denied Unifund’s motion, Unifund filed another business records affidavit by
Lutz with the court.  As in the previous
affidavit, Lutz attested that documents following his affidavit were the
business records of Unifund relating to the account held by Monroe.  The following documents were attached:

1.     Unifund Statement issued to
James Monroe, listing a 16-digit account number and stating that Monroe owed
$25,405.76 on this account, the account was past due and noting “This Account
Was Issued Under the Name of Citibank South Dakota NAand [sic] acquired from Citibank
(South Dakota) N.A.”

 

2.     Assignment from Unifund
Portfolio A, LLC to Unifund CCR Partners of “all of Assignor’s rights in the
Receivables, for collection purposes only, including conducting litigation in
Assignee’s name, for those Receivables which Assignor owns or may acquire from
time to time.” 

 

3.     Bill of Sale, Assignment and
Assumption Agreement from Citibank to Unifund Portfolio A, LLC of “Accounts
described in Section 1.2 of the Agreement.”[1]  

 

4.     Monthly statements of
Monroe’s AT&T Universal Card, ranging from August 2003 through August 2004,
detailing charges made by Monroe to the account, the accrual of interest at a
rate of 28.490% annually and showing a balance of $10,063.78 as of August 31,
2004.  

 

5.     Citibank Card Agreement,
from Citibank (South Dakota), N.A., stating that the agreement was binding upon
receipt of the card unless the account was cancelled within 30 days of receipt
of the card and there had been no authorized use of the card.  The Agreement contained the conditions of use
and the terms for calculating the balance owed on the card.  The Agreement also reserved Citibank’s right
to assign the account to a third party. 
The duplicated signature of Thomas W. Jones, President & CEO of
Citibank (South Dakota), N.A. appeared on the last page.

 

One month after Unifund filed this
business records affidavit, a bench trial was held.  At trial, Unifund admitted Lutz’s second
business records affidavit into evidence. 
Monroe testified that he did not have an account with Citibank, but he
admitted that he had an AT&T Universal credit card.  He admitted that the name and address on the
statements relied upon by Unifund were his actual name and address, but he
denied receiving any such statements.  At
the conclusion of the bench trial, the trial court entered judgment in Unifund’s
favor.  Unifund was awarded $25,405.76,
plus post-judgment interest and attorney’s fees of $1,500.  

Monroe filed a request for findings
of fact and conclusions of law.  The
trial court issued findings of fact and conclusions of law stating, in relevant
part:[2]

FINDINGS OF FACT

1.      That Citibank South Dakota, N.A., and [Monroe]
entered into an account agreement.  That
account has been assigned to Unifund CCR Partners.

 

2.     [Monroe] did purchase goods
and services at different places upon the account.  Said purchases were at the agreed prices
charged or at the reasonable market value.

 

3.     [Monroe]  promised to pay for said account.  

 

4.     Said account remains unpaid
damaging [Unifund] in the amount of $25,405.76.

 

5.     By failing to pay for said
account pursuant to the terms of the account agreement, [Monroe] breached the
account agreement.

 

6.     [Unifund] is entitled to
reasonable and customary attorney’s fees of $1,500.

CONCLUSIONS OF LAW

1.     Said account remains unpaid
damaging [Unifund] in the amount of $25,405.76.

 

2.     Pursuant to the terms of the
account agreement, [Monroe] was also responsible for interest upon the
indebtedness, as well as attorney’s fees.

 

3.     The interest upon the
indebtedness was at the rate of 6% per annum from November 5, 2007 until date
of entry of Judgment.

 

4.     [Unifund] has standing to
sue for breach of account agreement.

 

5.     [Unifund] performed under
the terms of the account agreement.

 

6.     By failing to pay for said
account pursuant to the terms of the account agreement, [Monroe] breached the
account agreement.

 

7.     That [Unifund] is entitled
to post-judgment interest at the rate of 5% per annum from the date of the
entry of the judgment until paid.

 

8.     That [Unifund] is entitled
to interest on the attorney’s fees and cost of court at the rate of 5% per
annum from the date of entry until paid.

Monroe filed a
motion for new trial, which the trial court denied.

ANALYSIS

On appeal, Monroe contends that
there is insufficient evidence to support (1) the trial court’s exercise of jurisdiction
over this case; (2) the trial court’s findings that his credit card account was
assigned to Unifund; (3) the trial court’s findings that he purchased goods and
services with the account, promised to pay for said account, and failed to pay
for the account and thereby breached his account agreement; and (4) the trial
court’s finding that Unifund was entitled to recover $25,406.76, plus
interest.  

A.  
Standard of Review

In an appeal of a judgment rendered
after a bench trial, the trial court’s findings of fact have the same weight as
a jury’s verdict.  In re K.R.P., 80 S.W.3d 669, 673 (Tex. App.—Houston [1st Dist.]
2002, pet. denied).  We review a trial
court’s factual determinations after a bench trial for legal and factual
sufficiency, using the same standards applied to jury verdicts.  Ortiz v.
Jones, 917 S.W.2d 770, 772 (Tex. 1996).  A challenge to the legal sufficiency will be
sustained if there is a complete absence of evidence of an essential fact, the
trial court was barred by rules of law or evidence from giving weight to the
only evidence proving an essential fact, no more than a scintilla of evidence
was offered to prove an essential fact, or the evidence conclusively
establishes the opposite of the essential fact.  City of
Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005).  We view the evidence in the light most
favorable to the trial court’s determination, crediting favorable evidence if a
reasonable fact finder could have done so and disregarding contrary evidence
unless a reasonable fact finder could not.  Id.
at 807.  Circumstantial evidence may be
used to establish any material fact, but it must establish more than mere
suspicion.  Lozano v. Lozano, 52 S.W.3d 141, 148 (Tex. 2001) (“The equal
inference rule provides that a jury may not reasonably infer an ultimate fact
from meager circumstantial evidence ‘which could give rise to any number of
inferences, none more probable than another.’”).  We consider the totality of the known
circumstances in determining the legal sufficiency of the circumstantial
evidence and the reasonable inferences to be drawn from it.  See
Felker v. Petrolon, Inc., 929 S.W.2d 460, 464 (Tex. App.—Houston [1st
Dist.] 1996, writ denied).

When a party attacks the factual
sufficiency of an adverse finding on an issue on which he had the burden of
proof, he must demonstrate on appeal that the adverse finding is against the
great weight and preponderance of the evidence.  Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex.2001).  We consider all the evidence and set aside the
judgment only if it is so contrary to the overwhelming weight of the evidence
that it is clearly wrong and unjust.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).
 

We review the trial court’s
conclusions of law de novo.  BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 794 (Tex. 2002).  Although
appellants may not challenge a trial court’s conclusions of law for factual
sufficiency, we may review the trial court’s legal conclusions drawn from the
facts to determine whether the conclusions are correct.  Id.

The trial court as fact finder is the
sole judge of the witnesses’ credibility and the weight to be given their
testimony, and we will not disturb the court’s resolution of evidentiary
conflicts that turn on credibility determinations or the weight of the
evidence.  Young Chevrolet, Inc. v. Tex. Motor Vehicle Bd., 974 S.W.2d 906,
914 (Tex. App.—Austin 1998, pet. denied); see
City of Keller, 168 S.W.3d at 819.

B.  
Jurisdiction/Standing

In his first point of error, Monroe
contends that the trial court lacked subject-matter jurisdiction because
Unifund failed to establish standing to bring its claims.  “Whether a court has subject matter
jurisdiction is a question of law.”  Frost Nat. Bank v. Fernandez, No.
08-0534, 2010 WL 1526369 (Tex. April 16, 2010) (citing Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226
(Tex. 2004)).  “Whether a pleader has
alleged facts that affirmatively demonstrate a trial court’s subject matter
jurisdiction is a question of law reviewed de novo.”  Id.
at 6; see also Eaves v. Unifund CCR Partners, 301 S.W.3d 402, 404 (Tex. App.—El
Paso 2009, no pet.).  

Standing is a prerequisite to
subject matter jurisdiction.  M.D. Anderson Cancer Ctr. v. Novak, 52
S.W.3d 704, 708 (Tex. 2001).  It is a
constitutional prerequisite to maintaining a suit under Texas law.  Tex. Ass’n
of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444–45 (Tex.1993); see also Univ. of Tex. Sw. Med. Ctr. at Dallas
v. Loutzenhiser, 140 S.W.3d 351, 358 (Tex. 2004) (“Not only may an issue of
subject matter jurisdiction ‘be raised for the first time on appeal by the
parties or by the court’, a court is obliged to ascertain that subject matter
jurisdiction exists regardless of whether the parties have questioned it.”  (internal citations omitted)), superseded by statute on other grounds, Tex. Gov’t Code Ann. § 311.034 (Vernon
Supp. 2009).  Standing cannot be waived. Tex. Ass’n of Bus., 852 S.W.2d at 445.  It cannot be conferred by consent.  See
Loutzenhiser, 140 S.W.3d at 358. 
Standing is a party’s justiciable interest in a controversy—only the
party whose primary legal right has been breached may seek redress for an
injury.  Eaves, 301 S.W.3d at 404.  Without
a breach of a legal right belonging to that party, that party has no standing
to litigate.  Id. (citing Cadle Co. v.
Lobingier, 50 S.W.3d 662, 669–70 (Tex. App.—Fort Worth 2001, pet. denied)).

“It has long been the rule that a
plaintiff’s good faith allegations are used to determine the trial court’s
jurisdiction.”  Id. (citing Brannon v. Pac.
Employers Ins. Co., 224 S.W.2d 466, 469 (Tex. 1949)).  A court may presume the truth of allegations made
in a party’s pleadings when determining standing.  Id. (citing
Tex. Ass’n of Bus., 852 S.W.2d at 446
( “[W]hen a Texas appellate court reviews the standing of a party sua sponte,
it must construe the petition in favor of the party . . .”);
Brown v. Todd, 53 S.W.3d 297, 305 n.3
(Tex. 2001) (“Because standing is a component of subject matter jurisdiction,
we consider [it] as we would a plea to the jurisdiction, construing the
pleadings in favor of the plaintiff.”)); see
also Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000)
(recognizing that plaintiffs do not have to “put on their case simply to
establish jurisdiction”).  Additionally,
as Monroe concedes in his brief, “a court is not required to look solely to the
pleadings but may consider evidence and must do so when necessary to resolve
the jurisdictional issues raised.” 
Appellant’s Brief, pg. 10 (citing TCJC
v. Miller, 51 S.W.3d 583, 587 (Tex. 2001)); see also Tex. Dept. of Parks
& Wildlife, 133 S.W.3d at 226 (noting that, “disputed evidence of
jurisdictional facts that also implicate the merits of the case may require resolution
by the finder of fact”).  

Monroe argues that Unifund failed
to establish standing because it failed to introduce evidence supporting its
claim, made in its petition, that it had acquired Monroe’s credit card account
from Citibank South Dakota, N.A. by assignment. 
In order to establish standing to maintain a breach of contract action,
a plaintiff must show either third-party beneficiary status or privity.  Neal v.
SMC Corp., 99 S.W.3d 813, 817 (Tex. App.—Dallas 2003, no pet.); Redmon v. Griffith, 202 S.W.3d 225, 239
(Tex. App.—Tyler 2006, pet. denied).  For
purposes of standing, “[p]rivity is established by proving that the defendant
was a party to an enforceable contract with either the plaintiff or a party who
assigned its cause of action to the plaintiff.”  Id.  An assignee stands in the shoes of the
assignor and may assert those rights that the assignor could assert.  See Gulf
Ins. Co. v. Burns Motors, Inc., 22 S.W.3d 417, 420 (Tex. 2000).

In Eaves, the El Paso Court of Appeals addressed facts similar to our
case in the face of a claim that the plaintiff lacked standing to sue on a
credit card debt.  See Eaves, 301 S.W.3d at 404–06.  The El Paso court held that the assignee—Unifund—had standing to sue when the evidence
demonstrated that the original holder of the debt (Citibank) issued a credit
card to Eaves, who defaulted on his account; Citibank sold the account to
Unifund Portfolio; and Unifund Portfolio assigned its rights to collect the
debt to Unifund Partners.  Id. at 404–06.  

Similarly, the trial court in this
case had evidence and pleadings supporting Unifund’s claim that it was the
assignee of Citibank’s account with Monroe—it had the Unifund Statement issued
to James Monroe, listing a 16-digit account number that was the same as
Monroe’s credit card number on his AT&T account statements,[3] informing Monroe he owed
$25,405.76 on this account and that “[t]his Account Was Issued Under the Name
of Citibank South Dakota NAand [sic] acquired from Citibank (South Dakota)
N.A.”  In addition, the trial court had
an “Assignment” from Unifund Portfolio A, LLC to Unifund CCR Partners of “those
Receivables which Assignor owns or may acquire from time to time.”  The trial court also had an agreement between
Unifund Portfolio A and Citibank, which established that Citibank did transfer
some accounts to Unifund Partners although the agreement did not include a list
of which accounts were conveyed. 
Finally, the trial court had Kenney’s affidavit, attached to Unifund’s
petition and its motion for summary judgment, stating that Monroe owed Unifund
$25,405.76 on an account that Unifund acquired from Citibank.  

At trial, Monroe testified that he
did not have a Citibank account, and the monthly statements admitted by Unifund
were labeled “AT&T Universal Card” rather than “Citibank.”  However, the above evidence submitted by
Unifund was to the contrary, and it established that Monroe had an account with
Citibank with a particular 16-digit number; that Monroe owed an outstanding
balance on that account; that Citibank assigned the account to Unifund
Portfolio A, LLC; and that Unifund Portfolio A, LLC assigned the account to
Unifund as an account receivable to be collected upon.  The trial judge, as the determiner of credibility,
was entitled to believe Unifund’s evidence and to discredit Monroe’s
testimony.  City of Keller, 168 S.W.3d at 819 (fact-finder is sole judge of
credibility of witnesses and weight to give their testimony).  Accordingly, we overrule Monroe’s first point
of error.

C.  
Existence
and Assignment of Contract with Citibank

 

Monroe’s second point of error is
that there is insufficient evidence to support the trial court’s finding of
fact and conclusion of law that Monroe and Citibank entered into an account agreement
and that the account was assigned to Unifund CCR Partners.  Monroe contends that there was “no evidence”
that he had a Citibank credit card, and he points to charges in the AT&T
Universal Card statements that are not specifically mentioned in the Citibank
cardholder agreement admitted at trial.  

However, Lutz’s affidavit and
Unifund’s business records—admitted into evidence at trial—affirmatively stated
that Unifund was collecting on an account that Monroe had with Citibank.  Lutz’s affidavit and the statement Unifund
forwarded to Monroe also contained the same account number as Monroe’s monthly
AT&T Universal Card account statements. 
While Monroe denied having an account with Citibank, Unifund’s business
records and Lutz’s are some evidence to the contrary.[4]  Further, as discussed above, there is ample
evidence in the record to support the trial court’s finding that the credit
card account was assigned to Unifund—both Lutz’s affidavit and Unifund’s
business records informed Monroe that the account has been assigned to
Unifund.   

Viewing the evidence in the light
most favorable to the trial court’s judgment, we do not find the evidence was
legally insufficient to support the trial court’s finding that Monroe and
Citibank entered into an account agreement and that the account was assigned to
Unifund CCR Partners.  City of Keller, 168 S.W.3d at 807, 810.  Similarly, considering all of the evidence, we
do not find that the trial court’s finding is against the great weight and
preponderance of the evidence, or that it is so contrary to the overwhelming
weight of the evidence that it is clearly wrong and unjust.  Dow
Chem. Co., 46 S.W.3d at 242; Cain v.
Bain, 709 S.W.2d at 176.  We overrule
Monroe’s second point of error.  

D.  
Breach of Contract

In his third point of error, Monroe
contends there is insufficient evidence to support the trial court’s findings
of fact that he purchased goods and services upon the Citibank account, that he
promised to pay for that account, and that he failed to pay on the account and
the conclusion of law that Monroe breached the account agreement.  

The essential elements of a breach
of contract claim are: (1) the existence of a valid contract; (2) performance
or tendered performance by the plaintiff; (3) breach of contract by the
defendant; and (4) damages sustained as a result of the breach.  Williams
v. Unifund CCR Partners Assignee of Citibank, 264 S.W.3d 231, 235–36 (Tex. App.—Houston
[1st Dist.] 2008, no pet.) (citing Winchek
v. Am. Express Travel Related Servs. Co., 232 S W.3d 197, 202 (Tex. App.—Houston [1st Dist.] 2007, no
pet.)).

Although Monroe denied having a
credit card issued by Citibank, he did agree that the name and address listed
on the AT&T Universal Card statements admitted at trial were correct.  In addition, Unifund’s business records and
the accompanying affidavit affirmatively stated that Monroe had an account with
Citibank and that he purchased goods and services with that account.  This evidence, in addition to the monthly
statements showing Monroe’s correct name and address and an accrual of charges
over a period of time, are some evidence that Monroe did have an account with
Citibank and that he made purchases on that account over a period of time.  Similarly, Lutz’s statement that a balance
was owed on the account, plus the admission of a Citibank Agreement showing
that the cardholder was obligated to pay as charged, was evidence supporting
the trial court’s findings. 

Viewing the evidence in the light
most favorable to the trial court’s judgment, we do not find that the evidence
was legally insufficient to support the trial court’s finding that Monroe purchased
goods and services upon his Citibank account, that he promised to pay for that
account, and that he failed to pay on the account and thereby breached the
account agreement.  City of Keller v. Wilson, 168 S.W.3d at 807, 810.  Similarly, considering all of the evidence, we
do not find that the trial court’s finding is against the great weight and
preponderance of the evidence, or that it is so contrary to the overwhelming
weight of the evidence that it is clearly wrong and unjust.  Dow
Chem. Co., 46 S.W.3d at 242; Cain,
709 S.W.2d at 176.  We overrule Monroe’s
third point of error.  

E.  
Trial Court’s Award of $25,406.76

In his fourth and final point of
error, Monroe contends that the evidence is insufficient to support the trial
court’s findings that Unifund has been damaged in the amount of $25,406.76,
plus interest.  Monroe again argues that
there is no evidence that he used a Citibank card to make purchases and that he
owed a balance on any Citibank card. 
Further, Monroe contends that Unifund failed to establish the terms of
any contract he may have had with Citibank, including failing to establish the
interest rate for purchases.  

The business records admitted at
trial included monthly statements of Monroe’s AT&T Universal Card, ranging
from August 2003 through August 2004, detailing charges made by Monroe to the
account, the accrual of interest at a rate of 28.490% annually (.07805% daily),
and a balance of $10,063.78 as of August 31, 2004.  The Citibank agreement attached as a business
record also stated additional charges for being over the credit limit of
$10,000 and late fees.  As with the other
findings contested by Monroe, Lutz’s affidavit, and the business records sent
to Monroe, are some evidence from which a reasonable fact-finder could
determine that Monroe owed at least $25,406.76 on his credit card account.  See City
of Keller, 168 S.W.3d at 827.  Other
than denying he had such a card—a contention the trial court evidently
disbelieved—Monroe did not admit any evidence to contradict this evidence.  In weighing all the evidence, we conclude the
finding of $25,406.76 in damages is not so contrary to the overwhelming weight
of the evidence as to be clearly wrong and manifestly unjust.  See Cain,
709 S.W.2d at 176.  

Pre-judgment interest at a rate of 6%
is authorized by section 302.002 of the Texas Finance Code.  Tex.
Fin. Code Ann. § 302.002 (Vernon 2006). 
Further, the trial court’s award of post-judgment interest is required
by section 304.001 of the Texas Finance Code.  See Tex. Fin. Code Ann. § 304.001 (Vernon
2006) (“A money judgment of a court in this state must specify the postjudgment
interest rate applicable to that judgment.”). 
Unifund pleaded for, and is entitled to, pre- and post-judgment interest
on the amount of monetary damages awarded to it—in this case, 6% pre-judgment
and 5% post-judgment.[5]

We overrule Monroe’s fourth point
of error. 

CONCLUSION

We affirm the judgment of the trial
court.

 

 

 

                                                                   George
C. Hanks, Jr.

                                                                   Justice


 

Panel
consists of Justices Keyes, Hanks, and Higley.

 

 











[1]           As with the previous version, Section 1.2 of
the Agreement was not attached.





[2]           The
trial court’s original findings of fact and conclusions of law were issued on
February 5, 2009.  After a motion by Unifund,
the trial court issued amended findings of fact and conclusions of law on
September 14, 2009.





[3]           The
fact that the same 16-digit account number was used for both the monthly
AT&T account statements and the Unifund account that was acquired from
Citibank is some evidence, albeit circumstantial, that the AT&T account
used by Monroe was indeed a Citibank-issued credit card.  





[4]           On
appeal, Monroe does not contend that the trial court erred by admitting these
records or that the trial court could not rely upon the statements contained
within them.  





[5]         Section 304.003 states that the post-judgment
rate is (1) the prime rate as published by the Board of Governors of the
Federal Reserve System on the date of computation; (2) 5% a year if the prime
rate as published by the Board of Governors of the Federal Reserve System
described by Subdivision (1) is less than five percent; or (3) 15% a year if
the prime rate as published by the Board of Governors of the Federal Reserve
System described by Subdivision (1) is more than 15%.  Tex.
Fin. Code Ann. § 304.003 (Vernon 2006). 
The prime rate on November 4, 2008 was 
4%.  See http://www.federalreserve.gov/releases/h15/20081110/.